NOT FOR PUBLICATION (Docket No. 24)

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY
CAMDEN VICINAGE

| | : | |
|---|---|---|
| VICTOR BOYKO, | : | |
| | : | |
| Plaintiff, | : | Civil No. 08-2214 (RBK/JS) |
| | : | |
| v. | : | **OPINION** |
| | : | |
| AMERICAN INTERNATIONAL GROUP, INC., AMERICAN INTERNATIONAL INSURANCE COMPANY OF NEW JERSEY, INC., CREDIT CONTROL SYSTEMS INC., and AIG MARKETING, INC., | : | |
| | : | |
| Defendants. | : | |

**KUGLER**, United States District Judge:

This matter comes before the Court upon a motion by Credit Control Systems, Inc. (CCS) to dismiss the Amended Complaint of Plaintiff [1] Victor Boyko, or in the alternative, to strike certain paragraphs. For the reasons set forth below, the Court grants CCS's Motion to Dismiss and denies the Motion to Strike.

**I.    BACKGROUND**

On December 2, 2006, Plaintiff purchased an automobile insurance policy from American International Insurance Company. The policy ran from December 2, 2006 to May 31, 2007. Mr.

---

[1] Plaintiff has not yet moved for class certification. Because the Court has not certified the class, it shall refer to Plaintiff in the singular.

1

Boyko paid in full all premiums due for the period. The policy contained an automatic termination provision, which provided: "If we offer to renew or continue and you or your representative do not accept, this policy will automatically terminate at the end of the current policy period. Failure to pay the required premium when due shall mean that you have not accepted our offer." Amd. Compl. at ¶ 36. On April 17, 2007, American International Insurance Company offered to renew the policy for an additional six months beginning on June 1, 2007 provided Plaintiff remitted the required premium by June 1, 2007. Plaintiff did not accept the renewal offer, nor did he pay the requested premium.

Nevertheless, on September 11, 2007, Plaintiff alleges that an entity known as "American Insurance Group (AIG)" sent him a payment demand for $262 allegedly owed for coverage provided prior to the cancellation of the policy. Plaintiff alleges that this bill included a demand for $31 for monies allegedly due to the New Jersey Guaranty Fund. Plaintiff did not pay the bill.

On October 22, 2007, Defendant Credit Control Services d/b/a Credit Collection Services sent Plaintiff a notice and demand for payment of $262 on behalf of "AIG Insurance Companies." Amd. Compl. at ¶ 42. CCS sent Plaintiff a second and third notice and demand on November 11, 2007 and December 2, 2007, respectively. CSS made numerous calls to Plaintiff demanding payment. On January 21, 2008, Plaintiff paid the full amount demanded under protest. The Defendants failed to forward the $31 payment to the New Jersey Guaranty Fund.

Plaintiff filed a Complaint against Defendants American International Group, Inc. (AIG), American International Insurance Company of New Jersey, Inc. (AIIC), and CCS on May 5, 2008. AIG and AIIC filed an answer on September 11, 2008. CCS filed an answer on October 20, 2008. With leave of court, Plaintiff filed an Amended Complaint on April 20, 2009

broadening the geographic scope of the proposed class of plaintiffs.

**II.     STANDARD**

Under Federal Rule of Civil Procedure 12(b)(6), a court may dismiss an action for failure to state a claim upon which relief can be granted. With a motion to dismiss, "'courts accept all factual allegations as true, construe the complaint in the light most favorable to the plaintiff, and determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief.'" Fowler v. UPMC Shadyside, 578 F.3d 203, 210 (3d Cir. 2009) (quoting Phillips v. County of Allegheny, 515 F.3d 224, 233 (3d Cir. 2008)). In other words, a complaint survives a motion to dismiss if it contains sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007).

In making this determination, a court must engage in a two part analysis. Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949-50 (2009); Fowler, 578 F.3d at 210-11. First, the court must separate factual allegations from legal conclusions. Iqbal, 129 S. Ct. at 1949. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Id. Second, the court must determine whether the factual allegations are sufficient to show that the plaintiff has a "plausible claim for relief." Id. at 1950. Determining plausibility is a "context-specific task" that requires the court to "draw on its judicial experience and common sense." Id. A complaint cannot survive where a court can only infer that a claim is merely possible rather than plausible. See id.

Alternatively, under Rule 12(f), a party may move to strike from a pleading "an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." A court has "considerable discretion" in deciding a Rule 12(f) motion. Tonka Corp. v. Rose Art Indus.,

3

Inc., 836 F. Supp. 200, 217 (D.N.J. 1993).  However, motions to strike are disfavored and usually will be denied "unless the allegations have no possible relation to the controversy and may cause prejudice to one of the parties, or if the allegations confuse the issues in the case."  River Road Dev. Corp. v. Carlson Corp. Ne., No. 89-7037, 1990 WL 69085, at *3 (E.D. Pa. May 23, 1990). Importantly, a motion to strike is not a proper way to dismiss part of complaint for legal insufficiency.  See 5C Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 1380, at 391 (3d ed. 2004).  Notwithstanding, a court can consider an improper Rule 12(f) motion as a motion to dismiss under Rule 12(b)(6).  See Deluca v. Michigan, No. 06-12552, 2007 WL 1500331, at *1 (E.D. Mich. May 23, 2007); Magnotta v. Leonard, 102 F. Supp. 593, 593 (M.D. Pa. 1952).

## III. DISCUSSION

As a threshold matter, CCS has requested in effect that its motions be treated as unopposed.  See Docket No. 26.  Under the New Jersey Local Civil Rules, a party may seek a 14 day extension of the motion day without the consent of the court, the clerk, or the opposing parties if the party serves a letter "before the date on which opposition papers would otherwise be due [.]"  L. Civ. R. 7.1(d)(5).  In this case, Plaintiff's opposition papers were due on May 18, 2009, the same day that he applied for the automatic extension.  See Docket No. 25.  CCS opposed the extension, arguing that Plaintiff should have requested an extension earlier.

While Plaintiff should have requested the extension before May 18, the Court will nevertheless accept Plaintiff's papers as having been timely filed.  Under Local Civil Rule 83.2(b), the Court may relax any local rule where adherence would result in injustice.  Since CCS does not appear to have been disserviced in any way by the delay, and since Plaintiff's mistake

appears to be in good faith, it would be unjust to ignore Plaintiff's papers.  The Court now turns to the substance of the pending motions.

Plaintiff asserts three claims against CCS in the Amended Complaint: 1) violation of the Fair Debt Collection Practices Act (FDCPA), 15 U.S.C. § 1692 et seq.; 2) violation of the New Jersey Consumer Fraud Act (CFA), N.J.S.A. § 56:8-2; and 3) violation of the Truth-in-Consumer Contract, Warranty and Notice Act (TCCWNA), N.J.S.A. § 56:12-15.  Amd. Compl. at ¶¶ 95-108.  Defendant CCS has moved to dismiss the Consumer Fraud Act claim and the TCCWNA claim.  CCS has also moved to strike certain allegations in the Amended Complaint regarding the FDCPA claim.

    A.    CFA

Plaintiff's second claim against CCS is under the CFA.  CCS argues that Plaintiff cannot state a claim for two reasons: 1) CCS did not sell any merchandise or real estate to Plaintiff, and 2) Plaintiff has failed to allege sufficient facts to show that CCS used deceptive or unconscionable practices.  Docket No. 24 at 9.  Plaintiff responded by arguing that CCS is liable as an agent of the other Defendants and CCS is liable for failing to be a bonded collection agency as required under New Jersey law.  See Docket No. 30 at 5-6.  The Court agrees with CCS and finds that Plaintiff has failed to state a claim under the CFA.

The CFA prohibits the use of unconscionable commercial practices or fraud "in connection with the sale" of merchandise or real estate.  N.J.S.A. § 56:8-2; Castro v. NYT Television, 851 A.2d 88, 95 (N.J. Super. Ct. App. Div. 2004) ("[T]o state a cause of action under the CFA, a plaintiff must allege the commission of deception, fraud, misrepresentation, etc., 'in connection with' the sale of merchandise or services.").  The purpose of the Act is to protect

5

consumers from deception and fraud, even when committed in good faith.  Gennari v. Weichert Co. Realtors, 691 A.2d 350, 365 (N.J. 1997).  Importantly, however, the CFA does not cover every transaction; instead, "[i]ts applicability is limited to consumer transactions which are defined both by the status of the parties and the nature of the transaction itself."  Arc Networks, Inc. v. Gold Phone Card Co., 756 A.2d 636, 638 (N.J. Super. Ct. Law. Div. 2000) (citing City Check Cashing, Inc. v. Nat'l State Bank, 582 A.2d 809 (N.J. Super. Ct. App. Div. 1990)).

      To state a CFA claim, a plaintiff must show three things: "1) unlawful conduct by defendant; 2) an ascertainable loss by plaintiff; and 3) a causal relationship between the unlawful conduct and the ascertainable loss."  Bosland v. Warnock Dodge, Inc., 964 A.2d 741, 749 (N.J. 2009).  A plaintiff must also show that he is a "consumer" and that he purchased "merchandise."  Viking Yacht Co. v. Composites One LLC, 496 F. Supp. 2d 462, 473 (D.N.J. 2007).

      "Merchandise" is defined to include "any objects, wares, goods, commodities, services or anything offered directly or indirectly to the public for sale[.]"  N.J.S.A. § 56:8-1(c).  "Consumer" is not defined by statute, but has been described as "one who uses (economic) goods, and so diminishes or destroys their utilities."  Viking Yacht, 496 F. Supp. 2d at 473 (quotations removed).  Finally, "sale" is defined to include "any sale, rental or distribution, offer for sale, rental or distribution or attempt directly or indirectly to sell, rent or distribute[.]"  N.J.S.A. § 56:8-1(e).

      Plaintiff's CFA claim must fail because CCS did not sell any merchandise or real estate to him.  The alleged violation here occurred when CCS called and sent notices to Plaintiff regarding a debt that he purportedly does not owe.  However, CCS's notices were not offers to sell–and Plaintiff did not buy–anything. CCS was not selling insurance, (which is merchandise

6

under New Jersey law, see Lemelledo v. Beneficial Mgmt. Corp. of Am., 696 A.2d 546, 551 (N.J. 1997)), and CCS was most certainly not selling debt. Its mere debt collection efforts on behalf of a third party who might have sold merchandise is not itself a sale of merchandise. See Hoffman v. Encore Capital Group, Inc., No. A-3008-07T1, 2008 WL 5245306, at *3 (N.J. Super. Ct. App. Div. Dec. 18, 2008) (holding collection activities did not involve sale of merchandise to consumers), certif. denied, 966 A.2d 1080 (N.J. 2009); see also Joe Hand Promotions, Inc. v. Mills, 567 F. Supp. 2d 719, 724 (D.N.J. 2008) (holding letter claiming money owed for sale of pay-per-view program did not involve the sale of merchandise). These facts are insufficient to show misrepresentation or an unconscionable practice "in connection with the sale" of merchandise or real estate.

Plaintiff counters by asserting that CCS was acting in concert with the other Defendants such that CCS's agency with them can create liability. See Docket No. 30 at 5. Plaintiff relies on Whittingham v. Amended Mortgage Electronic Registration Services, Inc., No. 06-3016, 2007 WL 1456196, at *8 (D.N.J. May 15, 2007) for the proposition that subsequent fraud in the performance of a fraudulent sale is actionable under the CFA. See Docket No. 30 at 5. Plaintiff further relies on Gennari v. Weichart Co. Realtors, 691 A.2d 350 (N.J. 1997) for the proposition that an agent involved in the perpetration of a fraud involving the sale of merchandise is also liable under the CFA. Plaintiff's reliance on those cases is faulty.

First, liability for subsequent fraud is seemingly limited to where the original person selling the merchandise or real estate continues the fraud himself. See Weiss v. First Unum Life Ins. Co., 482 F.3d 254, 266 (3d Cir. 2007) (holding fraud by *seller* at point of sale and then in subsequent performance creates liability under the CFA). Plaintiff here is not alleging that the

7

other Defendants continued the fraud themselves, but that they worked in concert with a third party, CCS, to perpetuate the fraud.

Second, while perhaps liability for subsequent fraud can be stretched to include efforts by debt collectors in conspiracy with the seller, a plaintiff making such a claim must plead facts supporting the alleged conspiracy. See Iqbal, 129 S. Ct. at 1951 (holding bare assertion of conspiracy is insufficient pleading). While the acts of a debt collector are possibly consistent with a scheme to defraud, they are also consistent with a standard debtor-debt collector relationship, i.e., a party owed a debt enlists the support of a debt collector to pursue the debt. Cf. id. (holding plaintiff must plead sufficient facts to show claim is plausible rather than merely possible, which means allegations merely consistent with an illicit purpose, but not showing that it is plausible, are insufficient). Here, Plaintiff has summarily plead, *inter alia*, that the "Defendants" were involved in a "joint enterprise." See Amd. Compl. at ¶ 17. Plaintiff has not plead any facts to support a concerted effort between CCS and the other Defendants such that the Court can infer that a scheme to defraud is plausible rather than merely possible.

Third, the agency theory on which Plaintiff relies does not support that an agent of a defrauding principal is always liable under the CFA, but rather supports that an agent is liable where the agent was intimately involved in the initial fraudulent sale. Cf. Gennari, 691 A.2d at 637 (holding real estate agent liable for fraudulent sale of poorly constructed homes where she was also an officer for the builder and was "integral" to the acquisition, marketing, and sale of the homes). Here Plaintiff has not plead any facts to support that CCS was involved in the initial sale of the underlying insurance such that CCS can be liable under the CFA.

Thus, based on this analysis, CCS did not sell anything to Plaintiff and Plaintiff has failed

to plead a relationship between CCS and the other Defendants such that liability can otherwise attach.[2]  Therefore, the Court grants CCS's Motion to Dismiss as to the CFA claim.

### B.     TCCWNA

Plaintiff's third claim against CCS is under the TCCWNA.  CCS argues that the TCCWNA claim must fail because the Act does not apply to debt collectors, and even if it does, Plaintiff is not a "consumer" under the Act.  Docket No. 24 at 4.  Plaintiff counters that CCS was acting as an agent for the other Defendants and thus it bears liability.  Docket No. 30 at 9.  The Court disagrees with Plaintiff and finds that the TCCWNA does not apply to CCS.

Among other things, the TCCWNA prohibits a "seller, lessor, lender, or bailee" from giving a written notice to a consumer that includes a provision that violates state or federal law.  N.J.S.A. § 56:12-15.  A "consumer" is defined as "any individual who buys, leases, borrows, or bails any money, property, or service which is primarily for personal, family, or household purposes."  Id.  The terms "seller, lessor, lender, or bailee" are not defined by statute.  Thus, to

---

[2] Plaintiff also claims in his opposition brief that CCS is liable under the CFA because it had not posted a bond to engage in collection activities, as is required by New Jersey law.  See Docket No. 30 at 6 (citing N.J.S.A. § 45:18-1).  Under the CFA, violation of certain regulations constitutes an "unlawful practice."  Cox v. Sears Roebuck & Co., 647 A.2d 454, 462 (N.J. 1994).  Generally, a violation of regulations promulgated under the CFA is sufficient to state a claim, see id.; however, at least one court has held that violation of regulations not promulgated under the Act can also suffice for a claim.  See Artistic Lawn & Landscape Co. v. Smith, 884 A.2d 828 (N.J. Super. Ct. Law. Div. 2005).  Notwithstanding, a CFA claim based on violation of a consumer protection regulation must still arise in connection with the sale of merchandise or real estate.  See generally Cox, 647 A.2d at 462-63.  Thus, here, where Plaintiff has not shown that CCS's actions were in connection with the sale of anything, Plaintiff cannot sustain a claim for violation of the bond requirement.

As an aside, this analysis cannot be read to hold that the Court finds that a violation of the bond requirement is a violation of the CFA.  The Court is not called on to decide, and thus will not, whether an alleged violation of N.J.S.A. § 45:18-1 supports a claim under the CFA against a debt collector.

define those terms, a reviewing court must rely on the plain language of the statute and give the language its ordinary meaning.  See Barrows v. Chase Manhattan Mortgage Corp., 465 F. Supp. 2d 347, 362 (D.N.J. 2006) (citing Miah v. Ahmed, 846 A.2d 1244, 1249 (N.J. 2004)).

Plaintiff does not assert in the Amended Complaint nor in the opposition brief that CCS is a seller, lessor, lender, or bailee.  Indeed, were Plaintiff to make such an argument, that assertion would fail since CCS did not sell, lease, lend or bail any money or property to Plaintiff.[3]  Cf. Barrows, 465 F. Supp. 2d at 362-63 (holding law firm and its attorneys who charged fees to mortgagee for actions on behalf of mortgagor not subject to TCCWNA).  Instead, Plaintiff argues that CCS was in an agency relationship with the other Defendants and is thus subject to the Act because they were a seller.  See Docket No. 30 at 9.  This argument also fails.  Under the plain language of the statute, liability does not extend to agents of the covered entities.  Thus, assuming that Plaintiff has alleged sufficient facts to support a principal-agent relationship, CCS cannot be liable under the TCCWNA for its acts on behalf of the other Defendants where CCS's acts did not involve selling, leasing, lending, or bailing.

Therefore, the Court grants CCS's Motion to Dismiss as to the TCCWNA claim.

**C.     Leave to Amend**

Having dismissed the CFA claim and the TCCWNA claim of the Amended Complaint, the Court must now address whether to grant leave to amend.  Where a complaint is dismissed for failure to state a claim, leave to amend should normally be granted.  Shane v. Fauver, 213 F.3d 113, 115 (3d Cir. 2000).  However, the rule is not absolute: Leave to amend is inappropriate where it would cause undue delay, the amendment is motivated by bad faith or a dilatory motive,

---

[3] Which also means that Plaintiff is not a "consumer" vis-a-vis CCS.

the amendment would cause prejudice, or the amendment is futile.  In re Burlington Factory Sec. Litig., 114 F.3d 1410, 1434 (3d Cir. 1997).

As to the CFA claim, the Court holds that leave to amend is warranted.  Plaintiff may potentially be able to plead facts that support a conspiracy between the other Defendants and CCS to support a claim.  Therefore, Plaintiff is granted leave to amend the CFA claim within 10 days of the accompanying Order.

As to the TCCWNA claim, however, the Court holds that leave to amend is futile.  Under no set of facts will Plaintiff be able to allege that CCS was a "seller, lessor, lender, or bailee."  Therefore, the Court denies Plaintiff leave to amend the TCCWNA claim.

**D.     Motion to Strike**

In addition to its Motion to Dismiss, CCS moves to strike paragraphs 49,[4] 50,[5] 97(b),[6] and 100(b)[7] of the Amended Complaint under Federal Rule of Civil Procedure 12(f).[8]  CCS contends

---

[4] "Each of the notices send by the Defendant Credit Control Services, Inc identified the name of the business as CCS or Credit Collection Services."  Amd. Compl. ¶ 49.

[5] "The Defendant Credit Control Services, Inc dba Credit Collection Services is not licensed nor bonded in the State of New Jersey as a debt collector pursuant to NJSA 45:18-1 et seq. since August 3, 2004.  Exhibit F."  Amd. Compl. ¶ 50.

[6] "The Defendant, Credit Control Services, Inc dba Credit Collection Services and C.C.S. has violated the Fair Debt Collection Practices Act 15 U.S.C. 1692 et setq [sic] (FDCPA) by their conduct, including, but not limited to: ... b) using a name for the business other than the true name of the debt collector (15 U.S.C. § 1692e(14))[.]"  Amd. Compl. ¶ 97(b).

[7] "The Defendant, Credit Control Services, Inc dba Credit Collection Services and C.C.S. has engaged in unfair and/or deceptive acts and practices with respect to Plaintiff and each Class member that includes one or more of the following: ... b. using a name for the business other than the true name of the debt collector [.]"  Amd. Compl. ¶ 100(b).

[8] For purposes of Defendant CCS's pending Motion to Strike, whether the Court treats it as a Rule 12(f) motion or a Rule 12(b)(6) motion is immaterial since Plaintiff responded to it as

that these paragraphs are immaterial and will cause prejudice and confusion. Docket No. 24 at 15. Plaintiff maintains that paragraphs 49, 97(b), and 100(b) are relevant to the FDCPA claim and that paragraph 50 is likewise relevant to the CFA claim and/or the FDCPA claim. The Court agrees with Plaintiff as to the FDCPA claim and paragraphs 49, 97(b), and 100(b), but disagrees as to the CFA claim and paragraph 50. The Court instead finds that paragraph 50 is only relevant to the FDCPA claim.

### 1. Paragraphs 49, 97(b), and 100(b)

Paragraphs 49, 97(b), and 100(b) each relate to the allegation that Credit Control Systems, Inc. violated the FDCPA by using a name, "Credit Collection Services" or "CCS," on the notices it sent to Plaintiff that were not its "true name." Under the FDCPA, a debt collector engages in false, deceptive, or misleading representations when collecting a debt if it uses "any business, company, or organization name other than the true name of the debt collector's business, company, or organization." 15 U.S.C. § 1692e(14). What constitutes a debt collector's "true name" is not defined by statute or the relevant legislative history.[9] The Federal Trade Commission has interpreted the provision to mean that a debt collector "may use its full business name, the name under which it usually transacts business, or a commonly-used acronym. When the collector uses multiple names in its various affairs, it does not violate [§ 1692e(14)] if it consistently uses the same name when dealing with a particular customer." Staff Commentary

---

if it were a motion to dismiss. See Docket No. 30 at 11.

[9] The court in Anthes v. Transworld Systems, Inc., 765 F. Supp. 162, 172 n. 11 (D. Del. 1991), interpreted the legislative purpose behind § 1692e(14) to prevent debt collectors from misrepresenting that they are credit bureaus. However, even if this is the purpose behind the statute, it does not shed much light on what is a business's true name.

on the Fair Debt Collection Practices Act, 53 Fed. Reg. 50,097-02, 50,107 (Dec. 13, 1988).[10] Alternatively, at least one court has held that a business's true name includes the name in which it has a license to conduct business under state law. See Kizer v. Am. Credit & Collection, No. B-90-78, 1990 WL 317475, at *6 (D. Conn. Dec. 17, 1990). Despite the ambiguity at the periphery of analysis of what is a true name, § 1692e(14) at its core clearly prohibits the use of a name that is neither the collector's actual corporate name nor its trade name, licensed or otherwise. See Peter v. GC Servs. L.P., 310 F.3d 344, 352 (5th Cir. 2002) (holding debt collector's use of "United States Department of Education" on outside envelope violated § 1692e(14)).

From this authority, the Court is persuaded that a collector's "true name" includes the collector's legal name (i.e., the registered corporate or LLC name with the state) as well as the name under which it is licensed to do business.[11] The Court is not convinced that a collector is using its "true name" where it engages in collection activities under an unlicensed trade name or its commonly known name.[12] Section 1962e(14) seems to suggest with the word "true" that only

---

[10] The Court is mindful that FTC Commentary on the FDCPA is not entitled to deference "'except to the extent its logic is persuasive.'" Brown v. Card Serv. Ctr., 464 F.3d 450, 455-56 (3d Cir. 2006) (quoting Dutton v. Wolpoff & Abramson, 5 F.3d 649, 654 (3d Cir. 1993)).

[11] This holding cannot be read to state the CCS is liable under the FDCPA because it used both Credit Collection Services and CCS in its notices. Where a collector uses an acronym after it fully identifies itself at the beginning of a notice does not give rise to liability.

[12] Moreover, the Court is unconvinced that the "least sophisticated debtor" would not be misled by a debt collector's use of a commonly used–but unlicensed or unregistered–name. See Wilson v. Quadramed Corp., 225 F.3d 350, 354 (3d Cir. 2000) (holding whether a practice is deceptive under the FDCPA is judged by whether the "least sophisticated debtor" would be misled); see also Catencamp v. Cendent Timeshare Resort Group Consumer Fin., Inc., 471 F.3d 780, 782 (7th Cir. 2006) ("[U]nsophisticated readers do not see through acronyms when the creditor's full name is missing.").

an official name will suffice.  Congress could have used a broader term such as "own" name, see 15 U.S.C. § 1692a(6) (defining "debt collector"), if it intended § 1692e(14) to be inclusive rather than exclusive of other names.  Given however that the purpose of the provision is to prevent fraud and misleading representations, and given that Congress used an exacting term like "true name," the Court is convinced that § 1692e(14) requires debt collectors to use a precise, official name when conducting debt collection activities.

With this standard in mind, the Court now turns to Defendant's pending Motion to Strike.  As an initial matter, Defendant's Motion is improper under Rule 12(f).  What CCS is effectively asking the Court to do is strike an entire count of Plaintiff's Amended Complaint.  Since this is not appropriately done under Rule 12(f), the pending Motion will be treated as a motion to dismiss for failure to state a claim.

Regardless of the standard used, CCS's Motion cannot be granted.  CCS first contends that the claim is insufficient because Plaintiff has not pled that he was deceived by CCS using the name Credit Collection Services or CCS, instead of Credit Control Systems.  Docket No. 24 at 11-12.  But CCS misconstrues § 1692e(14).  The section does not require an affirmative pleading that a person was mislead by the use of an improper name; indeed such deception is assumed where a party pleads that he received an improper communication.  Section 1692e begins by stating: "A debt collector may not use any false, deceptive, or misleading representations in connection with the collection of a debt.  Without limiting the general application of the foregoing, the following conduct is a violation of this section[.]"  From there, the statute specifically lists sixteen prohibited actions.  Subsection 14 does not include any language to the effect of "that deceives the party."  Thus, subsection 14 must be read to be a per se deceptive act.

In other words, if a party can prove, for example, that he received a letter using a name other than the debt collector's true name, he has proven a deceptive practice.[13]

CCS also contends that because Plaintiff has not pled that he sustained a loss from the purported FDCPA violation, he has not stated a claim. See Docket No. 24 at 12. This argument fails because the FDCPA is generally a strict liability statute, and thus does not require proof of actual damages to support a claim. See Russell v. Equifax A.R.S., 74 F.3d 30, 33 (2d Cir. 1996); Rosamilia v. ACB Receivables Mgmt., Inc., No. 08-4063, 2009 WL 1085507, at *5 (D.N.J. Apr. 22, 2009); Pace v. Leavitt, No. 06-2925, 2007 WL 432978, at *2 n.4 (D.N.J. Jan. 31, 2007), aff'd, 293 Fed. Appx. 919 (3d Cir. 2008); 15 U.S.C. § 1692k. But see Graziano v. Harrison, 950 F.2d 107, 113 (3d Cir. 1991) (holding no liability for debt collector for contacting debtor represented by counsel where collector did not know of the representation).

Finally, CCS's motion cannot be granted because significant questions of fact exist that foreclose a motion to dismiss. The Court is required at this stage to assume true the factual allegations in the Amended Complaint. Here, Plaintiff has pled facts supporting that CCS used a name other than its true name. Thus, despite CCS's protestations that Credit Collection Services or CCS is the name under which it usually transacts business, see Docket No. 24 at 12, the Court cannot make that determination with reference to extraneous information. Cf. Dickenson v. Townside T.V. & Appliance, Inc., 770 F. Supp. 1122, 1125-26 (S.D. W.Va. 1990) (granting summary judgment where defendants submitted affidavit, certificate of incorporation, state

---

[13] This conclusion differs markedly from the conclusion in Anthes, wherein the court held that a debt collector can use other names under § 1692e(14) "to the extent that their use is not false, deceptive, or misleading." 765 F. Supp. at 172. The Court believes that this holding is in discord with the structure and language of § 1692e as just examined above.

business license, city business license, printed advertisements, and debtor's rental agreements and termination notices showing business consistently conducted business and billed customers with same name).

Therefore, the Court denies CCS's Motion to Strike as to paragraphs 49, 97(b), and 100(b).

### 2. Paragraph 50

Plaintiff's allegation in paragraph 50 is that CCS is not licensed or bonded in New Jersey. Plaintiff suggests that this allegation is essential because it supports his CFA claim. See Docket No. 30 at 12. As discussed above, however, the CFA claim is deficient and the bond claim does not support it. Nevertheless, Plaintiff also argues that this allegation supports his FDCPA claim. See Docket No. 30 at 12. This argument has merit and warrants denying CCS's Motion to Strike. Evidence that CCS was unlicensed in New Jersey potentially supports that CCS was not conducting business in its "true name." That is, the allegation in paragraph 50 provides support that CCS could not conduct business in the name of Credit Collection Services, since that was not a name under which it was licensed to do business (at least in New Jersey). See Kizer, 1990 WL 317475, at *6.

Therefore, the Court denies CCS's Motion to Strike as to paragraph 50.

### E. Rule 56(f) Affidavit

In connection with the pending Motion to Dismiss, Plaintiff also filed an affidavit pursuant to Federal Rule of Civil Procedure 56(f). See Docket No. 30-3. Plaintiff alleges that CCS filed its motion as a motion to dismiss and/or for summary judgment. See Docket No. 30-3 at ¶ 2. He also alleges CCS relied on documents outside of the pleadings. Id. at ¶ 3. Plaintiff

requests that the Court delay decision on summary judgment until discovery is complete.  Id. at ¶ 5.  However, CCS has not filed a motion for summary judgment and it has not attached or relied on information beyond the pleadings.  Further, the Court has not converted any of the pending motions to a motion for summary judgment pursuant to Rule 12(d).  Therefore, Plaintiff's request is moot.

### IV. CONCLUSION

For the foregoing reasons, the Court GRANTS Defendant CCS's Motion to Dismiss as to the CFA claim and the TCCWNA claim.  The Court GRANTS Plaintiff leave to amend the CFA claim within 10 days of the accompanying Order, and the Court DENIES Plaintiff leave to amend the TCCWNA claim.  Finally, the Court DENIES CCS's Motion to Strike.


Dated:  12-23-2009                                                  /s/ Robert B. Kugler
                                                                    ROBERT B. KUGLER
                                                                    United States District Judge