NOT FOR PUBLICATION                                    (Docket Nos. 22 & 23)

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY
## CAMDEN VICINAGE

_____

|  |  |  |
|---|---|---|
| VICTOR BOYKO, individually and on behalf of all others similarly situated, | : : : : | |
| Plaintiff, | : : | Civil No. 08-2214 (RBK/JS) |
| v. | : : | **OPINION** |
| AMERICAN INTERNATIONAL GROUP, INC., et al., | : : : | |
| Defendants. | : : | |

_____

**KUGLER**, United States District Judge:

This matter comes before the Court upon two motions, one by Defendants American

International Group, Inc. ("AIG") and one by American International Insurance Company of New

Jersey, Inc. ("AIIC") and AIG Marketing, Inc. ("AIG Marketing") to dismiss in part the

Amended Complaint of Plaintiff Victor Boyko ("Mr. Boyko" or "Plaintiff"[1]), or in the

alternative, to strike certain paragraphs of the Amended Complaint.  For the reasons set forth

below, the Court denies in part and grants in part AIG's motion and denies in part and grants in

part the motion of AIIC and AIG Marketing.

## I.      BACKGROUND

On December 2, 2006, Mr. Boyko purchased an automobile insurance policy from AIIC.

_____

[1] Plaintiff has not yet moved for class certification.  Because the Court has not certified the class, it shall refer to Plaintiff in the singular.

He paid in full all premiums due for the period.  The policy contained an automatic termination provision, which provided: "If we offer to renew or continue and you or your representative do not accept, this policy will automatically terminate at the end of the current policy period. Failure to pay the required premium when due shall mean that you have not accepted our offer." (Am. Compl. ¶ 36.)  The policy ran from December 2, 2006 to May 31, 2007.  On April 17, 2007, AIIC offered to renew the policy for an additional six months beginning on June 1, 2007 provided Mr. Boyko remitted the required premium by June 1, 2007.  Mr. Boyko did not accept the renewal offer, nor did he pay the requested premium.

Nevertheless, on September 11, 2007, Mr. Boyko alleges that an entity known as "American Insurance Group (AIG)" sent him a Telefax letter demanding payment for $262 purportedly owed for coverage provided prior to the cancellation of the policy.[2]  Mr. Boyko alleges that this bill included a demand for $31 for monies allegedly due to the New Jersey Guaranty Fund.  Mr. Boyko further alleges that the AIG Defendants did not forward $31 to the New Jersey Guaranty Fund as he believes they were legally required to do.  Mr. Boyko did not pay the bill.

On October 22, 2007, Credit Control Services d/b/a Credit Collection Services ("CCS") sent Plaintiff a notice and demand for payment in the amount of $262 on behalf of "AIG

---

[2]  Although "American International Group, Inc. (AIG)" is a named defendant in this action, "American Insurance Group (AIG)" is not.  Adding to the confusion, the Telefax demand letter, attached to the Amended Complaint at Exhibit A, is signed by "AIG Auto Insurance." Moreover, the name "AIG" appears in the sender's address block above a Delaware address alleged in the Amended Complaint to be the principal place of business of Defendant AIIC. Plaintiff's brief in opposition to the instant motions indicates that the reference to "American Insurance Group (AIG)" was a typographical error, and that Plaintiff meant to allege that AIG sent the letter.

Insurance Companies." (Am. Compl. ¶ 42.) CCS sent Plaintiff a second and third notice and

demand on November 11, 2007 and December 2, 2007, respectively. CCS made numerous calls

to Mr. Boyko demanding payment. On January 21, 2008, Mr. Boyko paid the full amount

demanded "under protest." (Am. Compl. ¶ 46.)

Plaintiff filed a complaint against Defendants on May 5, 2008. AIG and AIIC filed an

answer on September 11, 2008. CCS filed an answer on October 20, 2008. With leave of court,

Plaintiff filed an Amended Complaint on April 20, 2009, broadening the geographic scope of the

proposed class of plaintiffs. The Amended Complaint sounds in nine counts. Count One alleges

breach of contact against AIIC. Counts Two through Five allege intentional misrepresentation,

negligence, breach of the duty of good faith and fair dealing, and unjust enrichment against AIG,

AIIC, and AIG Marketing (the "AIG Defendants"). Counts Six and Seven allege violations of

the New Jersey Consumer Fraud Act ("CFA"), N.J. Stat. Ann. 56:8-2, et seq.[3] Count Eight

alleges a violation of the Truth-in-Consumer Contract, Warranty and Notice Act ("TCCWNA"),

N.J. Stat. Ann. § 56:12-14, et seq. against the AIG Defendants and CCS. Count Nine alleges

violations of the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692, et seq.,

against CCS. In response to the Amended Complaint the AIG Defendants filed the instant

motions to dismiss.

## II.   STANDARD

Under Federal Rule of Civil Procedure 12(b)(6), a court may dismiss an action for failure

to state a claim upon which relief can be granted. With a motion to dismiss, "'courts accept all

--------

[3] Count VI is brought against the AIG Defendants. Count VII is brought against all Defendants.

factual allegations as true, construe the complaint in the light most favorable to the plaintiff, and determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief.'" Fowler v. UPMC Shadyside, 578 F.3d 203, 210 (3d Cir. 2009) (quoting Phillips v. County of Allegheny, 515 F.3d 224, 233 (3d Cir. 2008)). In other words, a complaint survives a motion to dismiss if it contains sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007).

In making this determination, a court must engage in a two part analysis. Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949-50 (2009); Fowler, 578 F.3d at 210-11. First, the court must separate factual allegations from legal conclusions. Iqbal, 129 S. Ct. at 1949. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Id. Second, the court must determine whether the factual allegations are sufficient to show that the plaintiff has a "plausible claim for relief." Id. at 1950. Determining plausibility is a "context-specific task" that requires the court to "draw on its judicial experience and common sense." Id. A complaint cannot survive where a court can only infer that a claim is merely possible rather than plausible. See id.

Alternatively, under Rule 12(f), a party may move to strike from a pleading "an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." A court has "considerable discretion" in deciding a Rule 12(f) motion. Tonka Corp. v. Rose Art Indus., Inc., 836 F. Supp. 200, 217 (D.N.J. 1993). However, motions to strike are disfavored and usually will be denied "unless the allegations have no possible relation to the controversy and may cause prejudice to one of the parties, or if the allegations confuse the issues in the case." River Road Dev. Corp. v. Carlson Corp. Ne., No. 89-7037, 1990 WL 69085, at *3 (E.D. Pa. May 23, 1990).

### III.   DISCUSSION

As a threshold matter, the AIG Defendants have requested in effect that their motions be treated as unopposed.  (See Docket. No. 26.)  Under the New Jersey Local Civil Rules, a party may seek a fourteen day extension of the motion day without the consent of the court, the clerk, or the opposing parties if the party serves a letter "before the date on which opposition papers would otherwise be due[.]" L. Civ. R. 7.1(d)(5).  In this case, Plaintiff's opposition papers were due on May 18, 2009, the same day that he applied for the automatic extension.  (See Docket No. 25.)  The AIG Defendants opposed the extension, arguing that Plaintiff should have requested an extension earlier.

Although the Plaintiff should have requested the extension before May 18, the Court will nevertheless accept Plaintiff's papers as having been timely filed.  Under Local Civil Rule 83.2(b), the Court may relax any local rule where adherence would result in injustice.  Because the AIG Defendants do not appear to have been adversely affected in any way by the delay, and because Plaintiff's mistake appears to be innocent, it would be unjust to ignore Plaintiff's papers. The Court now turns to the substance of the pending motions.

### A.   The AIG Defendants' Motions to Dismiss

AIG moves to dismiss Counts II and VII for failure to satisfy Federal Rule of Civil Procedure 9(b)'s heightened pleading requirements and to dismiss most of the remaining counts for failure to state a claim.  In the alternative, AIG moves to strike paragraphs 41 and 47 of the Amended Complaint – paragraphs accusing the AIG Defendants of failing to make required payments into the New Jersey Guaranty Fund – as immaterial and prejudicial.  AIIC and AIG Marketing also move to dismiss Counts II and VII for failure to comply with Rule 9(b), and in

the alternative to strike paragraphs 41 and 47.

### 1.    Count II:  Intentional Misrepresentation

The AIG Defendants argue that Plaintiff does not state a claim for intentional misrepresentation because Mr. Boyko did not rely on the AIG Defendants' alleged misrepresentations.[4]

The Court construes a claim of "intentional misrepresentation" as one for fraud.  See Jewish Ctr. of Sussex County v. Whale, 432 A.2d 521, 524 (N.J. 1981).  Under New Jersey law, the five elements of fraud are: "(1) a material misrepresentation of a presently existing or past fact; (2) knowledge or belief by the defendant of its falsity; (3) an intention that the other person rely on it; (4) reasonable reliance thereon by the other person; and (5) resulting damages." Gennari v. Weichert Co. Realtors, 691 A.2d 350, 367 (N.J. 1997).

The Amended Complaint identifies the demand for $262 for coverage provided as the relevant misrepresentation.  (Am. Compl. ¶ 40.)  The Amended Complaint alleges that Plaintiff paid his premiums in full.  (Id. ¶ 33.)  The Amended Complaint does not allege that Plaintiff paid the demand to any of the AIG Defendants, which is understandable given Mr. Boyko's position that, contrary to the Telefax letter's assertions, he did not owe the AIG Defendants anything. Instead, Plaintiff paid the $262 to CCS "under protest" in an attempt to mitigate his damages after CCS repeatedly demanded payment over a course of several months.  (Id. ¶ 46.)  Thus, although Plaintiff has pleaded detriment arguably caused by the AIG Defendants' misrepresentations, he has not pleaded detriment caused by reliance on those representations.

---

[4] The AIG Defendants also argue that Plaintiff has failed to plead misrepresentation with the particularity required by Federal Rule of Civil Procedure 9(b).  Because the Court decides that Plaintiff does not state a claim for misrepresentation, it does not reach the Rule 9(b) issue.

Reliance is a hallmark of common law fraud in New Jersey, without which a fraud claim must fail.  See Banco Popular North Am. v. Gandi, 876 A.2d 253, 261 (N.J. 2005).  Accordingly, the Court shall dismiss Count II against the AIG Defendants.

### 2.      Count III:  Negligence

AIG argues that Plaintiff has not alleged a violation of an applicable standard of care because Plaintiff has not pleaded any facts that plausibly suggest that AIG had anything to do with servicing Mr. Boyko's account or collecting insurance premiums.

To establish negligence in New Jersey, a plaintiff must prove (1) that the defendant had a duty of care; (2) that the defendant breached the duty of care; and (3) that the breach proximately caused actual damages.  Piscitelli v. Classic Residence by Hyatt, 973 A.2d 948, 965 (N.J. Super. Ct. App. Div. 2009).

The Amended Complaint alleges that AIG owed Mr. Boyko a duty of reasonable care "with respect to servicing their automobile insurance policies and collection practices."  (Am. Compl. ¶ 68.)  Plaintiff alleges that AIG sent him the Telefax letter demanding $262.  This letter supports the inference that AIG had a hand in servicing Mr. Boyko's insurance policy and collecting amounts due.  If true, these allegations are sufficient to raise Plaintiff's negligence claim above the speculative level.

The AIG Defendants argue strenuously throughout their motion that Plaintiff's claim that AIG sent the Telefax letter to Mr. Boyko is too implausible to survive a motion to dismiss.  This argument confuses the nature of the Court's analysis under Ashcroft v. Iqbal, -- U.S. --, 129 S. Ct. 1937 (2009).  As noted, under Iqbal the Court must dismiss implausible legal claims.  Fowler, 578 F.3d at 210-11.  In so doing, however, the Court must accept all of Plaintiff's factual

allegations as true and view the alleged facts in the light most favorable to him.  Id. at 210.  Here,

Mr. Boyko alleges that AIG sent him the Telefax demand letter.[5]  Due to its ambiguity, the

Telefax letter does not render impossible Plaintiff's factual contention that AIG sent the letter.

Thus, for purposes of the instant motion, it is of no moment whether the Telefax letter, taken as a

whole, makes it appear likely that AIIC  – and not AIG – was the author and sender.  Assuming

as the Court must that Mr. Boyko's factual allegations are true, his negligence claim is plausible.

Accordingly, the Court will not dismiss Count III.

> 3.        **Count IV:  Duty of Good Faith and Fair Dealing**

AIG argues that Plaintiff does not state a claim for a violation of the duty of good faith

and fair dealing because AIG does not have a contractual relationship with Mr. Boyko.

In New Jersey, all contracts contain an implied covenant of good faith and fair dealing.

Wilson v. Amerada Hess Corp., 773 A.2d 1121, 1126 (N.J. 2001).  The implied duty of good

faith and fair dealing, however, does not arise in the absence of a contractual relationship.  Noye

v. Hoffman-La Roche, Inc., 570 A.2d 12, 14 (N.J. Super. Ct. App. Div. 1990).

The Amended Complaint does not allege that Mr. Boyko had an insurance contract with

AIG.  Instead, the Amended Complaint states that "the Plaintiff purchased an auto insurance

policy issued by the Defendant, American International Insurance Company of New Jersey."

(Am. Compl. ¶ 31.)   Because the Amended Complaint does not allege that Plaintiff had a

contract with AIG, the Court will dismiss Count IV as it applies to AIG.

---

    [5] As noted, the Amended Complaint alleges that "Defendant American Insurance Group
(AIG)" – a non-party – sent Mr. Boyko the Telefax demand letter.  (Am. Compl. ¶ 40.)  Because
the Amended Complaint earlier identifies Defendant American International Group as "(AIG),"
(see Am. Compl. ¶ 4), the Court accepts Plaintiff's explanation that "American Insurance Group
(AIG)" should be construed as referring to Defendant AIG.

**4.      Count V:  Unjust Enrichment**

AIG argues that Plaintiff does not state a claim for unjust enrichment because the

Amended Complaint does not allege that he paid the $262 expecting remuneration.

Unjust enrichment is an equitable theory of recovery centered on the principle that "a

person shall not be allowed to enrich himself unjustly at the expense of another." Associates

Commercial Corp. v. Wallia, 511 A.2d 709, 716 (N.J. Super. Ct. App. Div. 1986).  In New

Jersey, a plaintiff alleging unjust enrichment must demonstrate that (1) the defendant received a

benefit; and (2) retention of that benefit by defendant would work an injustice.  VRG Corp. v.

GKN Realty Corp., 641 A.2d 519, 526 (N.J. 1994).  "The unjust enrichment doctrine requires

that plaintiff show that it expected remuneration from the defendant at the time it performed or

conferred a benefit on defendant and that the failure of remuneration enriched defendant beyond

its contractual rights."  Id.

In this case, Plaintiff has not pleaded that he expected remuneration in return for paying

the $262.  In fact, the Amended Complaint is clear that the AIG Defendants demanded this

amount for coverage already provided and that Plaintiff remitted this amount "under protest,"

denying that anything was owed.  In other words, the Amended Complaint makes clear that

Plaintiff did not expect the AIG Defendants to give him anything in return for his $262.

Accordingly, the Court will dismiss Count V as it applies to AIG.

**5.      Count VII:  New Jersey Consumer Fraud Act**

The AIG Defendants argue that Plaintiff has failed to plead his CFA claim with the

particularity required by Federal Rule of Civil Procedure 9(b) because it is impossible to glean

from the Amended Complaint which of the AIG Defendants have allegedly engaged in

9

unconscionable business practices.

The CFA was enacted to deter fraudulent practices by merchants in the marketplace.  See

Solo v. Bed Bath & Beyond, Inc., No. 06-1908, 2007 WL 1237825, at *2 (D.N.J. April 26,

2007).  The CFA declares unlawful:

> The act, use or employment by any person of any unconscionable
> commercial practice, deception, fraud, false pretense, false
> promise, misrepresentation, or the knowing concealment,
> suppression, or omission of any material fact with intent that others
> rely upon such concealment, suppression or omission, in
> connection with the sale or advertisement of any merchandise or
> real estate, or with the subsequent performance of such person as
> aforesaid . . . .

N.J. Stat. Ann. § 56:8-2.  To state a CFA claim, a plaintiff must allege "(1) an unlawful practice

by the defendants; (2) an ascertainable loss by plaintiff; and (3) a causal nexus between the first

two elements."  Parker v. Howmedica Osteonics Corp., No. 07-2400, 2008 WL 141628, at *2

(D.N.J. Jan. 14, 2008) (citing New Jersey Citizen Action v. Schering-Plough Corp., 842 A.2d

174, 176 (N.J. Super. Ct. App. Div. 2003)). It is immaterial to the CFA analysis "whether or not

any person has in fact been misled, deceived or damaged."  N.J. Stat. Ann. § 56:8-2.

With regard to pleading a claim for fraud, Federal Rule of Civil Procedure 9(b) requires

that, "[i]n alleging fraud or mistake, a party must state with particularity the circumstances

constituting fraud or mistake."  Fed. R. Civ. P. 9(b).  The Third Circuit has instructed that, "to

satisfy Rule 9(b), plaintiffs must plead with particularity the circumstances of the alleged fraud . .

. by pleading the date, place or time of the fraud, or through alternative means of injecting

precision and some measure of substantiation into their allegations of fraud."  Lum v. Bank of

Am., 361 F.3d 217, 223-24 (3d Cir. 2004) (internal quotations omitted).

The Court cannot agree with the AIG Defendants that the Amended Complaint lacks the requisite specificity.  The alleged unconscionable business practice is described in the Amended Complaint as a "uniform scheme" between the AIG Defendants to "inflate their profits" by charging unauthorized sums of money to canceling policy holders, such as the $262 charged to Mr. Boyko.  (Am. Compl. ¶ 55.)  Plaintiff offers the Telefax demand letter to substantiate his allegations of fraud.  The Telefax letter's ambiguity with respect to its author supports the inference that all AIG Defendants worked together to bilk Mr. Boyko.  Thus, the Defendants are certainly on notice as to the misconduct Plaintiff alleges.  See Strzakowlski v. Gen. Motors Corp., No. 04-4740, 2005 WL 2001912, at *6 (D.N.J. Aug. 16, 2005) (citing Seville Indus. Machinery Corp. v. Southmost Machinery Corp., 742 F.2d 786, 791 (3d Cir. 1984) ("Ultimately, pleadings of fraud are sufficient when they put the defendant on notice of the precise misconduct with which it is charged.").[6]   Accordingly, the Court will not dismiss Count VII.

### 6.      Count VIII:  Truth-in-Consumer Contract, Warranty and Notice Act

AIG argues that Plaintiff cannot maintain a TCCWNA claim against it because it did not sell the insurance policy to Mr. Boyko.

The TCCWNA requires that consumer contracts be written in a clear and understandable

---

[6] Defendants also argue that Count VI should be dismissed because there is no private cause of action under the Federal Trade Commission Act ("FTCA"), 15 U.S.C. § 41, et seq.  The FTCA does not create a private cause of action.  See, e.g., Skypala v. Mortgage Electronic Registration Sys. Inc., No. 08-5867, 2009 WL 2762247, at *1 n.1 (D.N.J. Sept. 1, 2009) (collecting cases).  However, the Court does not construe Count VI to be asserting a claim made actionable by the FTCA.  Rather, the Court understands Plaintiff to be alleging a direct violation of the CFA by arguing that conduct made unlawful by the FTCA is also unlawful under the CFA.  Clearly, the CFA does create a private right of action.  See Solo v. Bed Bath & Beyond, Inc., No. 06-1908, 2007 WL 1237825, at *2 (D.N.J. April 26, 2007).  Accordingly, the Court will not dismiss Count VI.

manner.  See Alloway v. Gen. Marine Indus., L.P., 695 A.2d 264, 274 (N.J. 1997).  The

TCCWNA provides, in pertinent part, that:

> No seller, lessor, creditor, lender or bailee shall in the course of his
> business offer to any consumer or prospective consumer or enter
> into any written consumer contract or give or display any written
> consumer warranty, notice or sign . . .  which includes any
> provision that violates any clearly established legal right of a
> consumer or responsibility of a seller, lessor, creditor, lender or
> bailee as established by the State or Federal law at the time the
> offer is made or the consumer contract is signed or the warranty,
> notice or sign is given or displayed.

N.J. Stat. Ann. § 56:12-15.  Consumer is defined as "any individual who buys, leases, borrows,

or bails any money, property or service which is primarily for personal, family or household

purposes."  Id.

Here, the Amended Complaint alleges that Plaintiff bought insurance from AIIC.  (See

Am. Compl. ¶ 31) ("[T]he Plaintiff purchased an auto insurance policy issued by the Defendant,

American International Insurance Company of New Jersey.").  Thus, it would appear that AIG is

not a seller vis-a-vis Mr. Boyko because he has not alleged that AIG sold him anything.

Plaintiff responds to this common-sense observation with the argument that the

TCCWNA should apply because his relationship with AIG was one of creditor-debtor as

evidenced by the Telewire letter.  Although the TCCWNA does not define the term creditor, see

N.J. Stat. Ann. § 56:12-30; Barrows v. Chase Manhattan Mortg. Corp., 465 F. Supp. 2d 347, 362

(D.N.J. 2006), un-defined words in a statute should be given their plain meaning, Barrows, 465

F. Supp. 2d at 362.  Generally speaking, the term "creditor" has been defined as  "one to whom a

debt is owed; one who gives credit for money or goods."  Id.

In this case, the Amended Complaint belies the allegation that AIG was Mr. Boyko's

creditor. Nowhere in the Amended Complaint does Plaintiff allege that AIG was his creditor. In fact, as previously noted, the Amended Complaint does not even allege that Plaintiff had a contractual relationship with AIG or that Mr. Boyko ever owed any money to AIG whatsoever.[7] Moreover, contrary to Plaintiff's contentions, the Telefax letter does not identify AIG as Mr. Boyko's creditor. Rather, the Telefax letter merely alerts Mr. Boyko that "there is an outstanding balance of $262.00 due on [his] canceled auto insurance policy." (Am. Compl. at Ex. A.) Finally, the Amended Complaint alleges that Plaintiff paid the policy in full and did not owe any of the AIG Defendants any money at the time he received the Telefax. Based on these allegations, the Court concludes that the Amended Complaint fails to allege that AIG was Mr. Boyko's creditor for purposes of the TCCWNA. Accordingly, the Court shall dismiss Count VIII against AIG.

**B.      The AIG Defendants' Motions to Strike**

The AIG Defendants move to strike paragraphs 41 and 47 of the Amended Complaint on the basis that these paragraphs are irrelevant and prejudicial to them. Paragraph 41 observes that Mr. Boyko's allegedly improper bill included a charge of $31 attributable to contributions made to the New Jersey Guaranty Fund. Paragraph 47 alleges that the AIG Defendants failed to forward the $31 surcharge to the New Jersey Guaranty Fund as Plaintiff argues they were legally required to do.

The New Jersey Property-Liability Insurance Guaranty Association Act ("PLIGAA"), N.J. Stat Ann. § 17:30A-1, et seq., creates a legal entity known as the New Jersey Property-

---

[7] Plaintiff's opposition brief indicates that he made his insurance premium checks payable to AIG. On a motion to dismiss, this observation is of no moment as the Court looks only to the contents of Plaintiff's well-pleaded complaint.

Liability Insurance Guaranty Association.  N.J. Stat. Ann. § 17:30A-6.  The PLIGAA authorizes

the Association to assess member insurers amounts necessary to cover the Association's

obligations, expenses, and costs.  N.J. Stat. Ann. § 17:30A-8a(3).  Member insurers may pass

along the cost of these assessments to policy holders in the form of premium surcharges in an

amount determined by the Insurance Commissioner.  N.J. Stat. Ann. § 17:30A-16.

       The Court does not agree that paragraph 41 is necessarily irrelevant to Plaintiff's claims.

Paragraph 41 states: "The Plaintiff's bill included a sum of 31.00 for monies due to the New

Jersey Guaranty Fund."  (Am. Compl. ¶ 41.)  In a nutshell, Plaintiff's theory of liability is that the

AIG Defendants billed him unauthorized amounts.  A copy of the insurance contract between the

parties was not attached to the Amended Complaint as an exhibit, and the Defendants did not

submit it as part of their instant motions.  As a result, the Court cannot say with certainty at this

stage in the litigation that Mr. Boyko's partial break-down of the allegedly improper charges

bears no relation to his claim for breach of contract against AIIC, or any of his other remaining

claims.  Accordingly, the Court declines to strike paragraph 41.[8]

       By way of contrast, the Court agrees with the AIG Defendants that paragraph 47 of the

Amended Complaint should be stricken.  Paragraph 47 states: "The Defendants failed to forward

the $31.00 of the payment which was for the New Jersey Guaranty Fund to the Fund as required

---

[8] In connection with AIG's pending motion to dismiss, Plaintiff also filed an affidavit
pursuant to Federal Rule of Civil Procedure 56(f).  Plaintiff urges the Court to delay adjudication
of the instant motions due to the fact that the AIG Defendants attached a memorandum to its
motion which was beyond the scope of the pleadings.  The memorandum was written by the
Chief Executive Officer of the New Jersey Property-Liability Insurance Guaranty Association to
member companies and purports to establish a 0.9% assessment on each insurance carriers's net
premium income.  The AIG Defendants offered this memorandum to support its motion to strike
paragraph 41.  Because the Court is denying AIG's motion to strike paragraph 41, Plaintiff's
request for more time to address the issues raised by the memorandum is moot.

by law and instead kept the money." (Am. Compl.¶ 47.)  The critical question underlying all of Plaintiff's claims against the AIG Defendants in this case appears to be whether or not the AIG Defendants were entitled to charge Mr. Boyko the $262, which included the $31allegedly owed to the Fund.  Conversely, none of the claims set forth in the Amended Complaint rise or fall on the basis of what the Defendants did with the allegedly improperly gained money after they received it.  Allowing Plaintiff to continue to investigate this irrelevant aspect of his case would prejudice the AIG Defendants in terms of time and resources. Accordingly, the Court will strike paragraph 47.

### C.      Leave to Amend

In the alternative, Plaintiff argues that he should be granted leave to amend the Amended Complaint in light of the deficiencies identified by the Court.

Where a complaint is dismissed for failure to state a claim, leave to amend should normally be granted.  Shane v. Fauver, 213 F.3d 113, 115 (3d Cir. 2000).  However, the rule is not absolute: Leave to amend is inappropriate where it would cause undue delay, the amendment is motivated by bad faith or a dilatory motive, the amendment would cause prejudice, or the amendment is futile.  In re Burlington Factory Sec. Litig., 114 F.3d 1410, 1434 (3d Cir. 1997).

As to the intentional misrepresentation and unjust enrichment claims, the Court concludes that granting leave to amend would be futile.  Consistent with Plaintiff's theory of the case and critical facts already alleged, it does not appear that Plaintiff can allege that he relied on the AIG Defendants' misrepresentations or expected remuneration for his $262.  Moreover, allowing Plaintiff to reverse his position at this point in the litigation would prejudice Defendants unduly. On the other hand, the Court concludes that granting leave to amend the TCCWNA claim is

appropriate.  Plaintiff may be able to allege facts supporting his claim that AIG was his creditor for purposes of the TCCWNA.  Accordingly, leave to amend Count VIII is granted and leave to amend Counts III and V is denied.

## IV.   CONCLUSION

For the reasons expressed above, the Court will grant the AIG Defendants' motions to dismiss Count II (intentional misrepresentation claim).  The Court will grant AIG's motion to dismiss Count IV (breach of duty of good faith and fair dealing claim); Count V (unjust enrichment claim), and Count VIII (TCCWNA claim) as brought against AIG.  The Court will deny the AIG Defendants' motion to dismiss Count VII (CFA claim).  The Court will deny AIG's motion to dismiss Count III (negligence claim) and Count VI (CFA claim).  The Court will grant the AIG Defendants' motions to strike paragraph 47 of the Amended Complaint.  The Court will deny the AIG Defendants' motions to strike paragraph 41 of the Amended Complaint.

Dated: 12-23-2009                     /s/ Robert B. Kugler
                                              ROBERT B. KUGLER
                                              United States District Judge