<u>**NOT FOR PUBLICATION**</u>        (Doc. Nos. 73, 74, 75, 77, 79, 90, 95, 98, 108, 112, 113)

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW JERSEY**
**CAMDEN VICINAGE**

| | | |
|---|---|---|
| _____ | : | |
| VICTOR BOYKO, individually and on | : | |
| behalf of all others similarly situated, | : | |
| | : | |
| Plaintiff, | : | Civil No. 08-2214 (RBK/JS) |
| | : | |
| v. | : | **OPINION** |
| | : | |
| AMERICAN INTERNATIONAL | : | |
| GROUP, INC., AMERICAN | : | |
| INTERNATIONAL INSURANCE | : | |
| COMPANY OF NEW JERSEY, INC., | : | |
| AIG MARKETING, INC. d/b/a | : | |
| 21st CENTURY INSURANCE, and | : | |
| CREDIT CONTROL SERVICES | : | |
| d/b/a, CREDIT COLLECTION | : | |
| SERVICES and C.C.S., | : | |
| | : | |
| Defendants. | : | |
| _____ | : | |

**KUGLER**, United States District Judge:

This is a class-action lawsuit arising out of the allegedly improper billing practices of a

group of insurance companies.  Plaintiff Victor Boyko ("Plaintiff") brings claims on behalf of

himself and others similarly situated against Defendants American International Group, Inc.

("AIG"), American International Insurance Company of New Jersey, Inc. ("AIIC" or "AIICNJ"),

AIG Marketing, Inc. d/b/a 21st Century Insurance ("AIG Marketing"), and Credit Control

Services d/b/a, Credit Collection Services and C.C.S. ("CCS") (collectively, "Defendants") for

several common law and statutory causes of action.  Presently before the Court are cross-motions

by Plaintiff and Defendants for summary judgment pursuant to Federal Rule of CivilProcedure

("FRCP") 56, cross-motions by Plaintiff and Defendants for leave to supplement the record, and

Plaintiff's motion for class certification pursuant to FRCP 23.

I.    **BACKGROUND**[1]

   A.  **Factual Background**

On December 2, 2006, Plaintiff purchased an automobile insurance policy from AIICNJ. The policy provided Plaintiff coverage from December 2, 2006 to May 31, 2007.  Plaintiff paid all premiums due on the policy during the coverage period.  The policy contains an automatic termination provision, which provides:  "If we offer to renew or continue and you or your representative do not accept, this policy will automatically terminate at the end of the current policy period.  Failure to pay the required premium when due shall mean that you have not accepted our offer."  (Second Am. Compl. ¶ 36).

On April 17, 2007, AIICNJ offered to renew the policy for a period beginning on June 1, 2007 and ending on December 1, 2007, provided that Plaintiff paid the required premium no later than June 1, 2007.  Plaintiff did not accept the renewal offer or pay the renewal premium.

Nevertheless, Plaintiff alleges that on September 11, 2007, AIG sent him a bill for $262.00 for insurance coverage provided "prior to the cancellation of the policy."  (Id. ¶ 40) (internal quotations omitted).  Plaintiff's bill also included a charge for $31.00 for payment due to the New Jersey Guaranty Fund.

On October 22, 2007, CCS sent a notice to Plaintiff demanding payment of $262.00 on behalf of "AIG Insurance Companies."  (Id. ¶ 42).  Plaintiff did not pay the bill.  Thereafter, on November 11, 2007 and December 2, 2007, CCS sent Plaintiff two additional notices demanding payment of $262.00 on behalf of "AIG Insurance Companies."  CCS also made numerous phone calls to Plaintiff demanding payment.

---

[1] The Court has previously discussed the facts in this case in the Opinion dated December 23, 2009 (Doc. Nos. 40, 42), which are incorporated by reference herein.

On, January 21, 2008 Plaintiff paid the full amount due.  Plaintiff alleges that CCS failed

to forward Plaintiff's $31.00 payment to the New Jersey Guaranty Fund.[2]  CCS cashed Plaintiff's

check on February 15, 2008.

**B.  Procedural History**

On May 7, 2008, Plaintiff filed the original Complaint in this matter against AIG, AIIC,

and CCS.  (Doc. No. 1).  On April 20, 2009, Plaintiff filed the Amended Complaint.  The

Amended Complaint alleges claims against AIG, AIIC, CCS, and AIG Marketing.  On

December 31, 2009, Plaintiff filed the Second Amended Complaint.  (Doc. No. 45).  The Second

Amended Complaint alleges breach of contract against AIIC (Count I); misrepresentation against

AIG, AIG Marketing, and AIIC (Count II); negligence against AIG, AIG Marketing, and AIIC

(Count III); breach of the duty of good faith and fair dealing against AIG, AIG Marketing, and

AIIC (Count IV); unjust enrichment against AIG, AIG Marketing, and AIIC (Count V); "unfair

and deceptive assessment and collection of fees" against AIG, AIG Marketing, and AIIC (Count

VI); violation of the New Jersey Consumer Fraud Act ("NJCFA"), N.J. Stat. Ann. 56:8-2, against

AIG, AIG Marketing, and AIIC (Count VII); violation of the Truth-In-Consumer Contract,

Warranty and Notice Act ("TCCWNA"), N.J. Stat. Ann. 56:12-14, against AIG, AIG Marketing,

and AIIC (Count VIII); violation of the Fair Debt Collection Practices Act ("FDCPA"), 15

U.S.C. § 1692 et seq., against CCS (Count IX); conspiracy under the NJCFA against all

Defendants (Count X); and violation of the TCCWNA against CCS (Count XI).  The Second

Amended Complaint sought compensatory, punitive, and treble damages, attorneys' fees, and

costs.  All of Plaintiff's claims center on the allegation that Defendants violated the automatic

termination provision by billing Plaintiff an earned premium after Plaintiff's contract terminated.

---

[2] Defendant objects that Plaintiff's claim that CCS failed to forward the $31.00 payment is inadmissible because it is irrelevant to any of Plaintiff's causes of actions.  The Court notes this objection and does not rely on this $31.00 payment in this Opinion.

Throughout the pendency of the litigation, the parties conducted extensive negotiations. As a result of those negotiations, the parties reached a settlement agreement. At the June 20, 2011 hearing on Plaintiff's unopposed motion for preliminary approval of the settlement class, the Court denied Plaintiff's motion (Doc. No. 67).

Plaintiff now makes an opposed motion for class certification pursuant to FRCP 23. In addition, the parties cross-move for summary judgment and for leave to supplement the record.

### C. Leave to File Supplements to the Record

Defendants and Plaintiff cross-move to supplement the record with evidence of actions that occurred after the close of discovery. Defendants state that "at the time they filed their opposition papers [to Plaintiff's Motion for Class Certification], a process was under way to identify policyholders who, like Plaintiff, had received a billing after termination of their respective policies due to a 'cancel and reinstate' transaction, and to refund their payment of such billings to them, together with interest." Defendants seek to admit a supplemental declaration from Timothy Fenu to the record in this case. Plaintiff states that he was not afforded an opportunity to discover what criteria Defendants used to determine which persons should receive a refund, or how such a refund was calculated. Plaintiff therefore requests that this Court deny Defendants' motion to supplement the record, or alternatively grant Plaintiff's cross-motion to supplement the record.

This Court has discretion to grant leave to supplement the record. See Edwards v. Pa. Tpk. Comm'n, 80 F. Appx. 261, 265 (3d Cir. 2003). The Court notes that discovery had closed on August 22, 2011 in this case. Defendants' motion was made on November 10, 2011. Here, Defendants seek to provide the results of a process that Defendants state was ongoing only as of "the time they filed their opposition papers [to Plaintiff's Motion for Class Certification]."

Plaintiff's Motion for Class Certification was filed on September 23, 2011.  Therefore, Defendants have not shown that this process began at a time when discovery was still ongoing. Defendants have not explained why this process to reimburse the relevant policyholders had not taken place prior to the close of discovery.

Plaintiff also moves to supplement the record, arguing that this Court consider a set of payments made by Defendants to individuals in the "cause unspecified" category who were improperly billed by Defendants in violation the automatic termination provisions in the individuals' contracts.  As discussed below, this Court finds that Plaintiff is not typical or common to the group of individuals in the "cause unspecified" category.  See discussion infra Part II.  Therefore, the Court finds that this supplemental information is not relevant to the Court's decision on Plaintiff's motion for class certification.

Accordingly, the Court denies Defendants' and Plaintiff's cross-motions for leave to supplement the record.

## II.    CLASS CERTIFICATION

### A.  Rule 23's Explicit Requirements

In order to qualify for class certification under Rule 23, a plaintiff must satisfy the four elements set out in Rule 23(a) and the requirements of one of the three subsections in Rule 23(b). See In re Constar Int'l Inc. Sec. Litig., 585 F.3d 774, 776 (3d Cir. 2009).  Rule 23(a) provides that class certification may be proper if:

> (1) the class is so numerous that joinder of all members is impracticable;
> (2) there are questions of law or fact common to the class;
> (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and
> (4) the representative parties will fairly and adequately protect the interests of the class.

Plaintiff seeks certification pursuant Rule 23(b)(3), which provides that certification is proper if:

> [T]he court finds that the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy. The matters pertinent to these findings include:
>
> (A) the class members' interests in individually controlling the prosecution or defense of separate actions;
>
> (B) the extent and nature of any litigation concerning the controversy already begun by or against class members;
>
> (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and
>
> (D) the likely difficulties in managing a class action.

Fed. R. Civ. P. 23(b)(3).

A plaintiff bears the burden of demonstrating that Rule 23's requirements are met by a preponderance of the evidence, and the district court "must make whatever factual and legal inquiries are necessary and must consider all relevant evidence and arguments presented by the parties." In re Hydrogen Peroxide Antitrust Litig., 552 F.3d 305, 306 (3d Cir. 2008). Thus, a district court should certify a class "only if the court is 'satisfied, after a rigorous analysis, that the prerequisites of Rule 23[] have been satisfied.'" Beck v. Maximus, Inc., 457 F.3d 291, 297 (3d Cir. 2006) (quoting Gen. Tel. Co. of the Sw. v. Falcon, 457 U.S. 147, 161 (1982)).

All of the class certification requirements are intended to serve as "guideposts for determining whether maintenance of a class action is economical and whether the named plaintiff's claim and the class claims are so interrelated that the interests of the class members will be fairly and adequately protected in their absence." Amchem Prods., Inc. v. Windsor, 521 U.S. 591, 626 n.20 (1997) (citations and internal quotation marks omitted).

**D.     Implicit Requirements for Class Certification**

In addition to Rule 23's explicit requirements, there are also implicit requirements for class certification. "Class certification presupposes the existence of an actual 'class.'" White v. Williams, 208 F.R.D. 123, 129 (D.N.J. 2002) (quoting In re Sch. Asbestos Litig., 56 F.3d 515, 519 (3d Cir. 1995)). A "proposed class must be sufficiently identifiable without being overly broad." Id. It may not be "amorphous, vague, or indeterminate" and it must be "administratively feasible to determine whether a given individual is a member of the class." Id. (quoting Mueller v. CBS, Inc., 200 F.R.D. 227, 233 (W.D. Pa. 2001)); see Allen-Wright v. Allstate Ins. Co., 2008 U.S. Dist. LEXIS 103272, *6-7 (E.D. Pa. Dec. 17, 2008) (identifying problems with a class definition that required case-by-case factual determination); Forman v. Data Transfer, Inc., 164 F.R.D. 400, 403 (E.D. Pa. 1995) (same). A putative class is not appropriate for certification if class membership would "require fact-intensive mini-trials." Solo v. Bausch & Lomb Inc., No. 06-2716, 2009 U.S. Dist. LEXIS 115029, at *14 (D.S.C. Sept. 25, 2009) (citing Cuming v. S.C. Lottery Comm'n, No. 05-3608, 2008 U.S. Dist. LEXIS 26917, at *1 (D.S.C. Mar. 28, 2008)).

### E.  The Proposed Classes

Plaintiff seeks to certify three classes of persons for the purposes of this case.[3]  The first class is a New Jersey class as to Defendant AIICNJ on the claims of breach of contract (Count I), negligence (Count III), breach of good faith and fair dealing (Count IV), New Jersey Consumer Fraud Act ("NJCFA") (Counts VII and X) and Truth-in-Consumer-Contract-Warranty and Notice Act ("WNA") (Count VIII).  Specifically, Plaintiff seeks to have the following class certified:

> All natural persons who, like Plaintiff, were insured by AIICNJ whose business
> was administered by AIGM during the period from six years prior to the filing of
> the complaint on May 8, 2008 to the date of class certification, whose policy

---

[3] Plaintiff originally sought to certify other classes, as described in Plaintiff's brief in support of Motion to Certify Class.  However, Plaintiff voluntarily agreed to redefine the classes into the three classes discussed in this Opinion. See Pl. br. at 16-19.

7

contained an automatic termination provision substantially similar to the provision of Plaintiff's policy, whose policies expired and were not renewed, and who thereafter received and paid a bill for premium for the new term following the expiration of their policy [because their policy was wrongly charged for one of the following reasons:] 1) Individual Customer Contact; 2) Cancel Non-Pay Cause Unspecified; or 3) Cancel & Reinstate.

Pl. reply br. at 3.  The three categories of 1) Individual Customer Contact; 2) Cancel Non-Pay

Cause Unspecified; and 3) Cancel & Reinstate are defined as follows by Defendants:

1) Individual Customer Contact – This category consists of those policies where the billing was issued due to a manual intervention to the billing system by a customer service advocate after having contact with the insured.[4]

2) Cancel Non-Pay Cause Unspecified – This category consists of those policies where the policies did not fall into any of the other categories defined by Defendants.[5]

3) Cancel & Reinstate – This category consists of those policies where the billing was issued due to a manual cancellation and reinstatement of a policy by a customer service advocate, which actions led to the bypass of the automatic termination mechanism in Defendants' billing system.[6]

Def. opp. br. at 4, 14-16.[7]

The second class Plaintiff seeks to certify is a national class for all persons who were

erroneously billed, and who paid the bill, as to Defendants AIG and AIGM.  Plaintiff seeks to

certify this class based upon a breach of the covenant of good faith and fair dealing (Count IV)

and negligence (Count III).  Specifically, Plaintiff defines the class as follows:

---

[4] Individuals classified in the "Individual Customer Contact" category include customers who contact AIGM or one of its subsidiaries and request information or changes regarding the customer's account.  In response to this inquiry, a customer service representative enters a manual change into the computer system, which causes the computer system's record of the customer's account to be altered such that the customer mistakenly received an unwarranted post-automatic termination billing.  There could be many different factual situations motivating such customer contact and the resultant policy change.  See Def. Ex. 3, Aster Decl., at 5-10.

[5] Individuals classified in the "Cause Unspecified" category are simply those individuals who do not fall into one of the other defined categories.  These individuals have potentially widely varying factual circumstances underlying their potential claims.  See Def. Ex. 3, Aster Decl., at 10.

[6] Individuals classified in the "Cancel and Reinstate" category include customers who, for example, requested an insurance quote for renewing their current insurance contract.  To generate such a quote, the customer service representative "would need to: (1) 'cancel' the existing policy in the system; (2) process the requested new quote; and then (3) 'reinstate' the existing policy."  Def. Ex. 3, Aster Decl., at 4-5.  This internal modification of the customers' account resulted in unwarranted post-automatic termination billings.  See id.

[7] See Pl. Ex. Y; Pl. Ex. M; Def. Ex. 3 for a tallying of the number of individuals that fall into each of these categories.

> All natural persons in the United States, excepting the District of Columbia, Hawaii, Massachusetts, Ohio and Rhode Island, who, like Plaintiff, were insured by a company whose business was administered by AIGM during the period from six years prior to the filing of the complaint on May 8, 2008 to the date of class certification, whose policy contained an automatic termination provision substantially similar to the provision of Plaintiff's policy, whose policies expired and were not renewed, and who thereafter received and paid a bill for premium for the new term following the expiration of their policy [because their policy was wrongly charged for one of the following reasons:] 1) Individual Customer Contact; 2) Cancel Non-Pay Cause Unspecified; or 3) Cancel & Reinstate.

Pl. reply br. at 4-5.

The third class sought to be certified by Plaintiff is with respect to CCS, for all persons who received a bill and made a payment as to the Fair Debt Collection Practices Act ("FDCPA") (Count XI), as follows:

> All natural persons in the United States, excepting the District of Columbia, Hawaii, Massachusetts, Ohio and Rhode Island, who, like Plaintiff, were insured by a company whose business was administered by AIGM and la[t]er serviced by CCS for collections during the period from one year prior to the filing of the complaint on May 8, 2008 to the date of class certification, whose policy contained an automatic termination provision substantially similar to the provision of Plaintiff's policy, whose policies expired and were not renewed, and who thereafter received and paid a bill for premium for the new term following the expiration of their policy [because their policy was wrongly charged for one of the following reasons:] 1) Individual Customer Contact; 2) Cancel Non-Pay Cause Unspecified; or 3) Cancel & Reinstate.

Pl. br. at 5.

The Court now analyzes these three proposed classes to determine whether they satisfy the requirements of Rule 23.

### 1. Numerosity

Defendant states that 1,094 individuals, one of whom was Plaintiff, "had post-expiration bills issued because of a cancel and reinstate transaction in the renewal period." Def. br. at 6 (citing Def. Ex. 3, Aster Decl. ¶ 7). Moreover, Defendants have issued refund checks to 380 AIGM policyholders who, like Plaintiff, "received and made payment on a premium bill . . .

9

because of a cancel and reinstate transaction."  Def. Ex. 6, Fenu Decl. ¶¶ 2, 5 (stating that AIGM refunded $47,840.49 in premium payments and $13,399.88 in interest).  The Court finds that numerosity is satisfied because there are hundreds of identified class members.  Although there is no threshold number necessary to satisfy the numerosity requirement, courts in this Circuit have held that classes of close to one hundred members are sufficient.  See Eisenberg v. Ganon, 766 F.2d 770, 785-86 (3d Cir. 1985) (finding that "[t]he allegation of more than [ninety] geographically dispersed plaintiffs met the numerosity requirement . . . ."); Weiss v. York Hosp., 745 F.2d 786, 808 (3d Cir. 1984) (determining that ninety-two class members satisfied Rule 23(a)(1)); id. at 808 n.35 (citing 3B J. Moore, Moore's Federal Practice ¶ 23.05[1], at 23-150 (2d ed. 1982)) (footnotes omitted) (observing that numbers exceeding one hundred will, with exception, sustain the numerosity requirement).  Here, due to the size of each class, Plaintiff satisfies the numerosity requirement.

### 2.  Commonality

The proposed classes also satisfy the commonality requirement.  "The commonality requirement [is] satisfied if the named plaintiffs share at least one question of fact or law with the grievances of the prospective class."  Stewart v. Abraham, 275 F.3d 220, 227 (3d Cir. 2001) (internal quotations omitted).  Class members need not share identical claims or claims arising from the same factual scenario.  See In re Prudential Ins. Co. of Am. Sales Practice Litig. Agent Actions, 148 F.3d 283, 310-11 (3d Cir. 1998); Baby Neal v. Casey, 43 F.3d 48, 56 (3d Cir. 1994) ("[F]actual differences among the claims of the putative class members do not defeat certification.").  In this case, all members of the putative class:  (1) had insurance policies with AIIC between January 1, 2002 and August 15, 2010 containing the disputed automatic termination provision, (2) wrongly received a bill for a premium during the post-expiration

period, and (3) paid the wrongly received bill.  The common legal issue shared by all members

of the proposed class is whether Defendants appropriately issued them a bill during the post-

expiration period pursuant to the disputed automatic termination provision.  Thus, because all

members of the putative class "share at least one question of fact or law," Plaintiff satisfies the

commonality requirement.

### 3.  Typicality

The Court finds that Plaintiff's claims are typical of the "Cancel & Reinstate" category of

persons in each of the Plaintiff's three proposed classes.  However, Plaintiff's claims are not

typical of the "Individual Customer Contact" and "Cancel Non-Pay Cause Unspecified"

categories of individuals in the three proposed classes.  Furthermore, Plaintiff is not typical of

the class of individuals who could bring negligence and Consumer Fraud Act claims against

Defendants.  Therefore, as described below, the Court will certify the classes only as to

individuals who, like Plaintiff, were wrongly billed due to "Cancel & Reinstate" transactions.

Furthermore, within these classes, the Court declines to certify the class causes of action in

negligence and under the Consumer Fraud Act.

A named plaintiff's claims are typical where "each class member's claims arise from the

same course of events and each class member makes similar legal arguments to prove the

defendant's liability."  Robinson v. Metro-North Commuter R.R. Co., 267 F.3d 147, 155 (2d Cir.

2001) (quoting Marisol A. v. Guiliani, 126 F.3d 372, 376 (2d Cir. 1997)).  The typicality

requirement precludes certification of classes "where the legal theories of the named plaintiffs

potentially conflict with those of the absentees by requiring that common claims are comparably

central to the claims of the named plaintiffs as to the claims of the absentees."  Baby Neal, 43

F.3d at 57.

Here, Plaintiff shares the same grievance with all individuals who were wrongly billed due to "Cancel & Reinstate" transactions, and nothing suggests that Plaintiff's interests diverge from the interests of the proposed classes.  Defendants entered into an insurance contract with each member of the proposed classes.  Each contract contained an automatic termination provision with terms similar to the automatic termination provision in Plaintiff's contract.  All members of the classes wrongly received and paid a bill during the post-expiration period.  Thus, all members of the classes would make similar legal arguments to recover under the applicable New Jersey and federal consumer protection laws.  Accordingly, Plaintiff satisfies the typicality requirement with respect to the "Cancel & Reinstate" category of individuals within Plaintiff's proposed classes as to AIICNJ and CCS.  See Weisfeld v. Sun Chem. Corp., 210 F.R.D. 136, 140 (D.N.J. 2002) ("[I]n instances wherein it is alleged that the defendants engaged in a common scheme relative to all members of the class there is a strong presumption that the claims of the representative parties will be typical of the absent class members.") (citation omitted).

Defendants assert that Plaintiff is not typical of the other class members because Plaintiff is subject to unique defenses, such as the common law voluntary payment rule.  Class representatives are not typical if they are "subject to a unique defense that is likely to become a major focus of the litigation."  In re Schering Plough Corp. ERISA Litigation, 589 F.3d 585, 599 (3d Cir. 2009) (emphasis added).  As discussed below, the Court denies summary judgment to Defendants on the issue of whether Plaintiff's claims are barred under the voluntary payment rule.  See discussion infra Part III.B.  The Court finds that Plaintiff has produced evidence that he acted under duress when paying the bill he knew to be wrong.  Because, as discussed below, the voluntary payment rule is an equitable doctrine to be decided by the Court, the Court necessarily resolves the question of fact regarding the voluntary payment rule.  As discussed below, the

12

Court finds that Plaintiff paid the $262 bill at least in part due to economic duress, as defined by the voluntary payment rule. Therefore, finding that the voluntary payment rule does not bar Plaintiff's breach of contract claim, the Court certifies Plaintiff's breach of contract class claim with respect to AIICNJ.

However, the Court finds that Plaintiff is barred from representing the proposed classes as to any claims in negligence and under the Consumer Fraud Act. Plaintiff is not typical of these classes because Plaintiff will have to spend substantial resources proving elements of the negligence and CFA claims that likely will not apply to other class members. "Ensuring that absent class members will be fairly protected requires the claims and defenses of the representative to be sufficiently similar not just in terms of their legal form, but also in terms of their factual basis and support." In re Schering Plough, 589 F.3d at 598.

Defendants argue that Plaintiff is not typical of the proposed classes with respect to the negligence and CFA claims, which require proof of proximate causation as an essential element. Plaintiff responds that there is ample proof of causation, since Plaintiff made his payment under duress and in fear of the consequences of nonpayment. However, as discussed below, the Court finds that there is a genuine dispute of material fact regarding whether Plaintiff made the payments under duress, or whether he made those payments voluntarily with the knowledge that he did not owe the payments. See discussion infra Part III.C and III.E. The existence of this genuine factual dispute prevents this Court from resolving this issue at the summary judgment stage.[8]

---

[8] The Court notes that there is a possibility that the jury will resolve the factual dispute of duress in a matter differently than this Court has resolved the similar factual question controlling the Voluntary Payment Doctrine defense. However, as discussed below, the Court is required to make a factual finding related to the application of an equitable doctrine at this summary judgment stage. Since the factual underpinnings regarding causation with respect to Plaintiff's negligence and CFA claims do not implicate an equitable doctrine, this Court is unable to resolve those genuine disputes of material fact on summary judgment. See Fed. R. Civ. Pro. 56(a).

The Court finds that, in light of the claims and issues in this complex litigation, Plaintiff could "become distracted by the presence of a possible defense applicable only to him," such that Plaintiff's interests and incentives may not be sufficiently aligned with those of the proposed classes. See In re Schering Plough, 589 F.3d at 599. Plaintiff's unique circumstances with respect to the issue of causation in the negligence and CFA claims are likely to become a sufficiently major focus of the litigation such that this issue should preclude Plaintiff from acting as a class representative. Accordingly, the Court declines to certify Plaintiff's negligence and CFA class claims.

The Court further finds that Plaintiff does not satisfy the typicality requirement with respect to the "Individual Customer Contact" and "Cancel Non-Pay Cause Unspecified" categories of individuals in the three proposed classes. Plaintiff, a victim of Defendants' billing errors, suffered from such errors because Defendants wrongly reinstated Plaintiff's policy when Plaintiff requested a renewal insurance quote after Plaintiff's original policy had already expired. Plaintiff's claims therefore do not "arise from the same course of events," nor will Plaintiff necessarily "make[] similar legal arguments to prove the defendant[s'] liability" as to errors resulting from the "Individual Customer Contact" and "Cancel Non-Pay Cause Unspecified" categories. See Robinson, 267 F.3d at 155. As noted above, the "Individual Customer Contact" category included individuals who were wrongly billed due to "manual intervention to the billing system by a customer service advocate after having contact with the insured." Defendants note that there were many different factual situations in each instance of this broad category that motivated such customer contact and the resulting policy change. Def. Ex. 3, Aster Decl., ¶ 10 (describing in detail several different factual situations involving individuals who were wrongly billed after contacting customer service for various reasons). Similarly, Plaintiff has not

demonstrated, nor can the Court see how Plaintiff could demonstrate, that Plaintiff's claims "arise from the same course of events" as individuals who were wrongly billed due to the "Cause Unspecified" category, since individuals in this category were grouped together precisely because they did not fall into one of the other specified categories.  Id. ¶ 11.  Therefore, the Court finds that Plaintiff is not typical of individuals in the "Individual Customer Contact" and "Cancel Non-Pay Cause Unspecified" categories.

### 4.  Adequacy of Representation

Finally, the Court finds that Plaintiff satisfies the adequacy of representation requirement. Adequacy of representation is a two-part inquiry that applies to both a plaintiff and his or her counsel.  In re Prudential, 148 F.3d at 312.  First, adequacy of representation asks whether a plaintiff's attorney is qualified, experienced, and able to conduct the litigation.  Id.  Second, "it serves to uncover conflicts of interest between named parties and the class they seek to represent."  Id.  Here, the parties offered sufficient evidence that their attorneys are qualified, experienced, and able to conduct this litigation.  Plaintiff's counsel has extensive experience litigating complex class actions and other consumer protection claims.[9]  See generally Cert. Louis Fletcher, Cert. Lewis Adler, Cert. Roger C. Mattson.  Moreover, there is no evidence of any conflict between Plaintiff and other class members.  Thus, Plaintiff and Plaintiff's counsel satisfy the adequacy of representation requirement under Rule 23(a).

---

[9] Defendants argue that Plaintiff's counsel cannot adequately represent the class because they may be called as fact witnesses.  As discussed below, the Court finds that Plaintiff's counsel cannot be disqualified from this case merely because of the possibility that he may be called as a fact witness.  Because the voluntary payment doctrine is an equitable doctrine to be decided by the Court and not the jury, and because the Court declines to bar Plaintiff's breach of contract claim under the voluntary payment doctrine, see discussion infra Part III.B, the fact that Plaintiff's counsel may be called to testify regarding the allegedly impersonating phone call to AIG is not sufficient reason to disqualify Plaintiff's counsel in this case.  Insofar as Defendants seem to argue that Plaintiff's counsel would also be required to testify as fact witnesses regarding the nature of the legal advice they provided to Plaintiff, Defendants have failed to demonstrate either that Plaintiff has waived his attorney-client privilege or that the privilege fails to apply with respect to these communications.  See Restatement (Third) of Law Governing Lawyers §§ 68 et seq.

### 5.  Predominance and Superiority

The Court finds that the proposed classes as modified also satisfy Rule 23(b)(3)'s requirements.  Under Rule 23(b)(3), the court must find that common questions of law and fact predominate over questions affecting only individual members.  In re Prudential, 148 F.3d at 314.  "Even a few common questions can satisfy [the predominance] requirement where their resolution can significantly advance the litigation."  Varacallo v. Massachusetts Mut. Life Ins. Co., 226 F.R.D. 207, 231 (D.N.J. 2005).  A party may also show that the predominance requirement is satisfied by demonstrating that the defendant made "similar misrepresentations, nondisclosures, or engaged in a common course of conduct."  Id.

Here, the members of the proposed classes as modified allege that Defendants wrongfully collected an earned premium after the termination of their insurance policies.  No individual members of the proposed classes have claims that warrant individualized proof.  Because all members of the proposed class allege "that [Defendant] . . . engaged in a common course of conduct" that violated the automatic termination provision, the predominance requirement is satisfied.

Under Rule 23(b)(3), the district court must also find that and the class-action device is superior to all other available means of handling the litigation.  In re Prudential, 148 F.3d at 314. Rule 23(b)(3) provides a list of four factors that the district court may use to determine whether the plaintiff satisfies the superiority requirement:

> (A) the class members' interests in individually controlling the prosecution or defense of separate actions;
>
> (B) the extent and nature of any litigation concerning the controversy already begun by or against class members;
>
> (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and

(D) the likely difficulties in managing a class action.

Fed. R. Civ. P. 23(b)(3)(A)-(D). Here, the Court finds that the members of the proposed classes do not have a greater interest in controlling the prosecution of these actions individually than as classes. Furthermore, there is no evidence that other litigation on these same issues has already been initiated by other members of the proposed classes. Especially with respect to the AIIC Class, which is a New Jersey class, it is desirable to the class to have the litigation concentrated in the District of New Jersey. Finally, the difficulties in managing a class action are alleviated in this case, where the individualized factual issues do not predominate over the class-wide factual similarities. Defendants argue that individualized issues predominate because the policy forms are each unique and require individualized determinations to identify whether each individual is a member of a proposed class. However, Plaintiff notes that all of the policies necessarily contain AIG's "Automatic Termination" clause, which Defendants do not dispute is substantively uniform across all AIG policies. Here, Plaintiff's proposed classes are further limited to individuals who wrongly received bills from AIIC, AIG, AIG Marketing, or CCS, and made subsequent payments. Therefore, the Court finds that Plaintiff has established sufficient factual similarity between Plaintiff and the proposed class members.

Defendants further argue that the differences between each state's laws preclude class certification with respect to the AIG and AIGM national class ("the AIG Class"). Plaintiff presents three legal theories as to the AIG Class, namely breach of contract, negligence, and breach of the implied covenant of good faith and fair dealing. As to contract law, Plaintiffs note that state law differences are not substantial, since the breach of contract claim in this class action is limited to application of basic common law contract principles. Pl. br. at 15 (citing Steinberg v. Nationwide Mutual Insurance Co., 224 F.R.D. 67 (E.D.N.Y 2004) (finding that for

purposes of contract interpretation, there were no material differences among the states' pertinent common law breach of contract principles)).  The Court agrees with Plaintiff that the legal elements of a breach of contract claim are substantially similar in all fifty states, such that certification of the AIG Class as to the breach of contract claim is proper.

Defendants next argue that Plaintiff's claims in negligence and breach of good faith and fair dealing against the AIG Class involve substantial differences in state law.  Plaintiff does not dispute Defendants' assertions, but argues that these difficulties can be addressed by the use of individual state subclasses and/or a special master to manage the subclasses.  Alternatively, Plaintiff requests that the Court certify a class for fact-finding purposes, and then decertify the class for separate resolution of the state-specific legal issues with respect to negligence and breach of implied covenant of good faith and fair dealing.  See In re Sch. Asbestos Litig., 56 F.3d at 519.

The Court agrees with Defendants that Plaintiff's proposed resolution would involve multiple trials applying different state law to each claim against the AIG Class.  The Court finds that it would be too cumbersome and inefficient to break out separate state subclasses with respect to each of the proposed AIG Class's negligence and breach of good faith and fair dealing claims.  The Court further finds that it would not be in the interests of judicial economy to certify the AIG Class for factfinding purposes, followed by decertification for separate resolution of each of the state-specific legal issues regarding the class claim for breach of the implied covenant of good faith and fair dealing.[10]

### F.  Classes to be Certified

---

[10] Irrespective of the above discussion, the Court finds below that AIG is entitled to summary judgment as to all claims against it.  See discussion infra Part III.C, III.D, and III.E.  Therefore, the certification of the proposed class for factfinding purposes could only have applied to one claim, breach of the implied contract of good faith and fair dealing, against one party, AIGM.  These findings further weigh in favor of denying class certification against AIGM.

Based on the above discussion, the Court certifies the following two classes under

Federal Rule of Civil Procedure 23.  The first class is a New Jersey class as to Defendant

AIICNJ ("the AIICNJ class"), as follows:

> All natural persons who, like Plaintiff, were insured by AIICNJ whose business
> was administered by AIGM during the period from six years prior to the filing of
> the complaint on May 8, 2008 to the date of class certification, whose policy
> contained an automatic termination provision substantially similar to the
> provision of Plaintiff's policy, whose policies expired and were not renewed, and
> who thereafter received and paid a bill for premium for the new term following
> the expiration of their policy due to a Cancel & Reinstate transaction.

A "Cancel & Reinstate" transaction is defined as follows:

> Cancel & Reinstate – This category consists of those policies where the billing was
> issued due to a manual cancellation and reinstatement of a policy by a customer service
> advocate, which actions led to the bypass of the automatic termination mechanism in
> Defendants' billing system.

The AIICNJ class is certified as to the claims for breach of contract (Count I) and Truth-in-

Consumer-Contract-Warranty and Notice Act ("WNA") (Count VIII).

The second class is a national class as to CCS, for all persons who received a bill

and made a payment as to the Fair Debt Collection Practices Act ("FDCPA"), as follows:

> All natural persons in the United States, excepting the District of Columbia,
> Hawaii, Massachusetts, Ohio and Rhode Island, who, like Plaintiff, were insured
> by a company whose business was administered by AIGM and la[t]er serviced by
> CCS for collections during the period from one year prior to the filing of the
> complaint on May 8, 2008 to the date of class certification, whose policy
> contained an automatic termination provision substantially similar to the
> provision of Plaintiff's policy, whose policies expired and were not renewed, and
> who thereafter received and paid a bill for premium for the new term following
> the expiration of their policy due to a Cancel & Reinstate transaction.

The Court declines to certify a national class as to Defendants AIG or AIGM.[11]

As discussed above, Plaintiff seeks to certify this class based upon the theories of breach

of the covenant of good faith and fair dealing, and negligence.  However, the Court

---

[11] As discussed below, the Court finds that summary judgment for AIG is properly granted with respect to all claims
that Plaintiff brings against AIG.

declines to certify this class on the negligence claim, since, as discussed above, Plaintiff is not sufficiently typical of the proposed class.  The Court further declines to certify the class on the breach of good faith and fair dealing claim, due to the disparity in state laws regarding this cause of action.

**G.  Approval of Class Notice**

Plaintiff moves the Court, pursuant to Federal Rule of Civil Procedure 23, to approve the method of notice as to all members in each class.  Prior to approving a class, a district court must "direct to class members the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort."  Fed. R. Civ. P. 23(c)(2)(B).  In order to satisfy the notice requirement, the proposing party must comply with the guidelines contained in Rule 23(c)(2), which provides that in Rule 23(b)(3) class actions:

> The notice must clearly and concisely state in plain, easily understood language:
>
> (i) the nature of the action;
> (ii) the definition of the class certified;
> (iii) the class claims, issues, or defenses;
> (iv) that a class member may enter an appearance through an attorney if the member so desires;
> (v) that the court will exclude from the class any member who requests exclusion;
> (vi) the time and manner for requesting exclusion; and
> (vii) the binding effect of a class judgment on members under Rule 23(c)(3).

Fed. R. Civ. P. 23(c)(2).  The form of notice is committed to the district court's discretion, "subject to due process requirements."  Zimmer Paper Prods., Inc. v. Berger & Montague, 758 F.2d 86, 90 (3d Cir. 1985).  Due process requires notification of:  (1) "the nature of the pending litigation"; (2) the class action's general terms; (3) "that complete information is available from the court files"; and (4) "that any class member may appear and be heard at the Fairness

Hearing."  In re Prudential, 962 F. Supp. at 527.

        Here, Plaintiff proposes to send information via first-class mail to members of the

proposed classes at their last known addresses, based on the information in Defendants'

database.  With respect to the manner of providing notice, "[i]t is well settled that in the usual

situation first-class mail and publication in the press fully satisfy the notice requirements of both

Fed. R. Civ. P. 23 and the due process clause."  Zimmer, 758 F.2d at 90 (citing Eisen v. Carlisle

& Jacquelin, 417 U.S. 156, 173-77 (1974)).  Plaintiff notes that Defendants have complete

mailing information (or may readily obtain updated mailing information) for all members of the

approved classes, and requests that Defendants be required to provide the notice or cooperate

with Plaintiff by giving him the information necessary to provide the notice.  Pl. br. at 47.

Defendants do not dispute that they should assist Plaintiff in providing necessary and reasonable

notice.  The Court therefore holds that Defendants must, at their option, either 1) provide the

necessary notice via first-class mail to the members of each class, or 2) provide Plaintiff with the

necessary information from Defendants' database to equip Plaintiff to provide notice to the

members of each class.  Furthermore, whenever a mailed notice becomes returned as

undeliverable, Defendants must make a reasonable effort to determine the intended recipient's

current address and to re-mail the notice to the new address.  In addition to these measures,

Defendants are ordered to establish (1) a website providing information concerning the status of

the class action suit and the status of the claims submission period, and (2) a toll-free phone

number.  The Court finds that these means of providing notice to the members of each class is

reasonable.  See Bradburn Parent Teacher Store, Inc. v. 3M, 513 F. Supp. 2d 322, 328-29 (E.D.

Pa. 2007) (finding due process requirements satisfied where class action administrator mailed

notice to class members via first-class mail, and re-mailed undeliverable notices to class

members after conducting search for updated addresses); <u>Wilson v. United Intern. Investigative</u>

<u>Servs. 401(k) Sav. Plan</u>, No. 01-6126, 2002 WL 734339, at *7 (D.N.J. Apr. 23, 2002) (due

process requirements satisfied where "[d]efendants . . . mail[ed] . . . notice to the last known

address of the members as contained in the records.").

The Court also holds that to satisfy the requirements of Federal Rule of Civil Procedure

23, the information to be provided in the mailed notice must contain the following information:

(1) a description of the nature of the case and the claims asserted; (2) an explanation of how to

file an objection or exclusion; (3) a notification that all proposed members may retain counsel

and enter an appearance; and (4) information concerning how to review the court file or contact

the class counsel and defense counsel.  Furthermore, the notice will contain an easy-to-read

summary of critical dates, and will direct each class member to counsel for additional

information.  The Court finds that this information, provided in a clear and understandable

manner on each individual notice, will satisfy the requirements of Rule 23(c)(2).

## III. SUMMARY JUDGMENT MOTIONS

### A.  Standard

Summary judgment is appropriate where the Court is satisfied that "there is no genuine

issue as to any material fact and that the movant is entitled to judgment as a matter of law."  Fed.

R. Civ. P. 56(c); <u>see</u> <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 330 (1986).  A genuine issue of

material fact exists only if the evidence is such that a reasonable jury could find for the

nonmoving party.  <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 248 (1986).  When the Court

weighs the evidence presented by the parties, the Court is not to make credibility determinations

regarding witness testimony.  <u>Sunoco, Inc. v. MX Wholesale Fuel Corp.</u>, 565 F. Supp. 2d 572,

575 (D.N.J. 2008).  "The evidence of the non-movant is to be believed, and all justifiable

inferences are to be drawn in his favor."  Anderson, 477 U.S. at 255.

However, to defeat a motion for summary judgment, the nonmoving party must present

competent evidence that would be admissible at trial.  See Stelwagon Mfg. Co. v. Tarmac

Roofing Sys., 63 F.3d 1267, 1275 n.17 (3d Cir. 1995).  The nonmoving party "may not rest upon

the mere allegations or denials of" its pleadings and must present more than just "bare assertions

[or] conclusory allegations or suspicions" to establish the existence of a genuine issue of material

fact.  Fireman's Ins. Co. of Newark, N.J. v. DuFresne, 676 F.2d 965, 969 (3d Cir. 1982) (citation

omitted); see Fed. R. Civ. P. 56(e).  "A party's failure to make a showing that is 'sufficient to

establish the existence of an element essential to that party's case, and on which that party will

bear the burden of proof at trial,' mandates the entry of summary judgment."  Watson v. Eastman

Kodak Co., 235 F.3d 851, 857-58 (3d Cir. 2000) (quoting Celotex Corp., 477 U.S. at 322).

### B.  Breach of Contract – AIICNJ

Plaintiff and AIICNJ cross-move for summary judgment on Plaintiff's breach of contract

claim.  Under New Jersey law, the party asserting a breach of contract "has the burden to show

that the parties entered into a valid contract, that the defendant failed to perform his obligations

under the contract and that [the party asserting the breach] sustained damages as a result."

Murphy v. Implicito, 920 A.2d 678, 689 (N.J. Super. App. Div. 2007).  "[A] material breach by

either party to a bilateral contract excuses the other party from rendering any further contractual

performance."  Magnet Res. v. Summit MRI, Inc., 723 A.2d 976, 981 (N.J. Super. App. Div.

1998).  "Whether conduct constitutes a breach of contract and, if it does, whether the breach is

material are ordinarily jury questions."  Id. at 982.

Plaintiff argues that he is entitled to summary judgment on the breach of contract claim because Plaintiff has proven the existence of a valid contract, which Defendant does not dispute. Pl. br. at 13 (citing Ex. C, Insurance Policy issued by AIICNJ to Plaintiff).  Plaintiff argues that he has paid all the premiums due under the policy, and that Defendant has breached the terms of the contract by charging Plaintiff for coverage in violation of the automatic termination provision of the policy.  Plaintiff further asserts that he was damaged as a result of Defendant's breach in the amount of $262.  Pl. Ex. Q, Boyko Cert.

AIICNJ does not dispute these assertions, but argues the affirmative defense of the voluntary payment doctrine ("VPD").  The VPD is an equitable doctrine that provides that "where a party, without mistake of fact, or fraud, duress or extortion, voluntarily pays money on a demand which is not enforcible [sic] against him, he cannot recover it back."  Simonson v. Hertz Corp., 2011 WL 1205584, at *3 (D.N.J. Mar. 28, 2011) (quoting In re N.J. State Bd. of Dentistry, 423 A.2d 640, 643 (N.J. 1980)); Messner v. Union County, 34 N.J. 233, 236, 167 A.2d 897, 898 (1961) (noting that the VPD does not apply in cases involving "unjust enrichment, fraud, duress or improper conduct on the part of the payee").  To properly apply the VPD, this Court must make four determinations: 1) whether Plaintiff made the payment to AIICNJ voluntarily, 2) whether Plaintiff was under a mistake of fact, 3) whether Plaintiff was a victim of fraud, and 4) whether Plaintiff was under duress or extortion.  Id.

Since the VPD is equitable in nature, "factual as well as legal disputes" are for the Court, and not the jury, to decide.  See Penbrook Hauling Co., Inc. v. Sovereign Const. Co., Ltd., 346 A.2d 433, 433 (Sup. Ct. N.J. App. Div. 1975) (citing Weintraub v. Krobatsch, 317 A.2d 68, 74 (N.J. 1974)) (holding that there is no right to jury trial on equitable defense of equitable estoppel); New Jersey Model Jury Charge 4.10N(2).  Therefore, this Court must make the

24

necessary determinations in deciding the question of whether the VPD bars Plaintiff's claims.

The central dispute regarding application of the VPD is whether Plaintiff made his payments under duress. Plaintiff argues that the VPD should not bar his claims because he was under duress at the time he made the payment to AIICNJ. Defendants argue that Plaintiff was not under duress, but that he instead made the payment because he wanted to end the dispute with AIICNJ. Def. br. at 6. Defendants further argue that Plaintiff made the payment on the advice of his attorneys, and therefore must have made the payment knowingly and voluntarily. Id. at 15.

In Ross Sys. v. Linden Dari-Delite, 173 A.2d 258 (N.J. 1961), the New Jersey Supreme Court held that "[p]ayments are made under duress when they are induced by the wrongful pressure of the payee and the payor has no immediate and adequate remedy in the courts to resist them." Id. at 261 (citing Miller v. Eisele, 168 A. 426 (E. & A. 1933); 79 A.L.R. 655 (1932); Dalzell, "Duress By Economic Pressure I and II," 20 N.C. L. Rev. 237, 342 (1942); Dawson, "Economic Duress-An Essay in Perspective," 45 Mich. L. Rev. 253 (1947)). Plaintiff does not dispute that he made the payment knowing that he did not owe the money. Plaintiff also concedes that he knew that he could have sent AIICNJ proof of his active auto insurance to demonstrate to AIICNJ that he had other insurance coverage, and therefore should not have been billed by AIICNJ for the period in question. Pl. br. at 5. Plaintiff states that he preferred to pay the money rather than produce his auto insurance coverage, even though he knew he did not have to perform either course of action. Accordingly, the Court finds that AIICNJ was not entitled by the terms of the policy to receive proof of Plaintiff's other active auto insurance, and that Plaintiff had no obligation to produce this information.

25

In Ross Systems, a franchisor brought suit against a franchisee for violation of a franchise agreement. The franchisee brought a counterclaim against the franchisor for past overpayments made, which the franchisee argued it was due under the terms of the franchise agreement. The franchisor argued that the franchisee was barred by the VPD from asserting this counterclaim because the franchisee made the overpayments voluntarily and with knowledge that they were not liable to pay the charges at the time they were paid. Ross Systems, 173 A.2d at 261. The Ross Systems Court held that the VPD did not apply because the franchisee was under duress. Because the franchisor wrongfully exerted pressure on the franchisees to pay, and the franchisees feared that nonpayment "might jeopardize their franchise agreement or result in the loss of their source of supply," the Court found the existence of duress. Id. at 262.

Similarly, in In re N.J. Board of Dentistry, the Board of Dentistry was sued by an association of dentists which sought to recover monies collected in excess of the Board's statutory authority. Board of Dentistry, 423 A.2d at 640. The Board of Dentistry argued that a dentist who paid his fees with knowledge that they were not enforceable under law could not recover for overpayment of fees. The dentists responded that they had no choice but to pay the registration if they were to continue to practice their profession legally. Id. at 644. The New Jersey Supreme Court held that "the payment of a tax in order to avoid the loss of the payor's right to practice his profession or to continue in business renders the payment involuntary." Id. Accordingly, the Court declined to apply the VPD to bar the dentists' claim.

Defendants argue that Plaintiff's admissions regarding his own knowledge and his reliance on his counsel's advice preclude a finding of duress in this case. Def. br. at 6-8 (citing Boyko Dep. at 34-35, 61, 67-68). Plaintiff counters via an affidavit stating that Plaintiff paid the June 26, 2007 bill for $262.00 "in order to avoid some of the consequences of non-payment." Pl.

Ex. Q, Boyko Cert., ¶ 8.  Plaintiff further states under oath that "CCS commenced and continued collection efforts against me even though I told them I didn't owe any money."  Id. ¶ 9.

The Court finds that there is a dispute regarding Plaintiff's motives and state of mind at the time he made the payment.  However, as noted above, the VPD is an equitable doctrine that requires this Court to resolve the relevant disputes when considering whether to apply the VPD.  Accordingly, the Court finds that, despite Plaintiff's knowledge that he did not owe the money, Plaintiff was at least in part fearful of the consequences of nonpayment at the time he paid the bill, including unwanted debt-collections communications and potential reporting to credit ratings agencies.  Plaintiff's fear of the economic and emotional consequences of nonpayment is sufficient to constitute duress under Ross Systems and N.J. Board of Dentistry, supra, since Plaintiff's fear was reasonable and was due to "wrongful pressure" exerted by AIICNJ and CCS.  Therefore, the Court declines to apply the VPD to bar Plaintiff's claims.  The Court further finds that it would be inappropriate to apply the VPD to bar Plaintiff's claims where, as here, Plaintiff made his payment with a reservation of rights, "under protest to mitigate his damages[,] and without waiving any and all claims he may have concerning [Defendants' bill]."  Pl. Ex. V.

Accordingly, due to the absence of a genuine factual or legal dispute regarding the elements of Plaintiff's underlying breach of contract claim against AIICNJ, the Court grants summary judgment to Plaintiff on his breach of contract claim.

### C.  Negligence – AIG, AIGM, & AIICNJ

The Plaintiff and AIG next cross-move for summary judgment on Plaintiff's negligence claims.  To establish negligence in New Jersey, a plaintiff must prove (1) that the defendant had a duty of care; (2) that the defendant breached the duty of care; and (3) that the breach proximately caused actual damages.  Piscitelli v. Classic Residence by Hyatt, 973 A.2d 948, 965

(N.J. Super. Ct. App. Div. 2009).

The Court first discusses the negligence claims against AIICNJ, AIGM, and AIG in turn.

### 1. AIICNJ

Defendants argue that Plaintiff's negligence claim against AIGM and AIICNJ are barred by the economic loss doctrine. New Jersey courts have held that "a tort remedy does not arise from a contractual relationship unless the breaching party owes an independent duty imposed by law." Saltiel v. GSI Consultants, Inc., 788 A.2d 268, 280 (N.J. 2002). The policy behind the economic loss doctrine is that "[t]ort principles, such as negligence, are better suited for resolving claims involving unanticipated injuries, and contract principles are generally more appropriate for determining claims for consequential damage that parties have or could have addressed in their agreement. Bubbles n' Bows, LLC v. Fey Pub. Co., 2007 WL 2406980 (D.N.J. Aug. 20, 2007) (Wolfson, J.) (citing Spring Motors Distrib., Inc. v. Ford Motor Co., 98 N.J. 555, 579 (1985)). The Court has found that AIICNJ had a contractual relationship with Plaintiff through the insurance policy, and that AIICNJ breached the policy. Plaintiff has failed to demonstrate any duty of care owed by AIICNJ separate and apart from this contract. Therefore, the Court grants summary judgment to AIICNJ on the negligence claim.

### 2. AIGM

AIGM moves for summary judgment on the negligence claim because Plaintiff cannot prove proximate causation. AIGM contends that Plaintiff's lawyers, and not AIGM, were the proximate cause of Plaintiff's injuries because Plaintiff paid the bill on the advice of his lawyers, whom Defendants claim induced Plaintiff to voluntarily pay the bill.[12] Def. br. at 9.

---

[12] The Court notes that AIICNJ makes the same argument as AIGM regarding Plaintiff's failure to demonstrate proximate causation in the negligence claim. Though the analysis of proximate causation with respect to AIICNJ is similar to the analysis with respect to AIGM, the Court need not reach this issue since as discussed above, the Court grants summary judgment to AIICNJ on the negligence claim based on the economic loss doctrine.

The Court finds that there is a genuine dispute of material fact regarding the element of proximate causation with respect to Plaintiff's negligence claim against AIGM.  Therefore, summary judgment must be denied.  The Court notes that Plaintiff stated in deposition that he knew he did not owe the $262 to AIGM.  Boyko Dep. at 24, 61.  Defendants argue that Plaintiff sought advice from his counsel regarding this bill, and that Plaintiff was told by his counsel to pay the bill so that they could manufacture a lawsuit.  Def. br. at 9-10.  Defendants point to a January 15, 2008 telephone call to customer service, during which a person purporting to be Plaintiff[13] asked questions regarding Plaintiff's account and bills.  Id.  Defendants assert that Plaintiff's counsel made this call while falsely claiming to be Plaintiff.

Plaintiff counters that he does not have to demonstrate that Defendants are the sole cause of his losses in order to establish proximate causation.  Pl. reply br. at 12-13.   To be liable in tort, a party need only be a substantial factor, not the sole factor, of another party's damages.  An "actor's negligent conduct is not a substantial factor in bringing about harm to another if the harm would have been sustained even if the actor had not been negligent."  Vuocolo v. Diamond Shamrock Chemicals Co., 573 A.2d 196, 294-295 (N.J. Super. Ct. App. Div. 1990) (quoting Restatement of Torts, 2d, § 431 at 428 (1965).  Based on this standard, the Court cannot grant summary judgment to AIGM as to the negligence issue.  If AIGM had not made an error in servicing Plaintiff's insurance policy, Plaintiff would not have received and paid the improperly issued bill.  Therefore, AIGM is necessarily a but-for cause of Plaintiff's injury.  Plaintiff asserts that AIGM is also a proximate cause of Plaintiff's injury because even assuming that Plaintiff had paid the bill partly on the advice of his lawyers, AIGM's actions in referring Plaintiff's account to CCS for collection, and the numerous billings and phone calls demanding payment of

---

[13] Plaintiff stated in deposition that he does not remember making the January 15, 2008 call, and that the voice in the recording does not sound like Plaintiff's voice.

the bill, were a substantial cause of Plaintiff's payment.  AIGM in turn asserts that the actions of

Plaintiff's counsel constitute such a compelling factor in causing Plaintiff to submit the payment

that AIGM could not also be a proximate cause of Plaintiff's payment.  Def. br. at 9-10 (citing

Boyko Dep. at 83-84).  This Court declines to find that either Plaintiff or Defendants have

established the issue of proximate causation as a matter of law.  There is a genuine dispute of

material fact regarding Plaintiff's motivations for making the payment.  Therefore, summary

judgment as to the issue of AIGM's negligence must be denied to both Plaintiff and AIGM.

### 3.  AIG

Plaintiff asserts in his negligence claim that AIG "had a duty of care concerning the

servicing of [Plaintiff's] account."  Pl. br. at 14.  AIG has demonstrated, based on evidence in the

record, that it had no direct relationship with Plaintiff, as AIG neither issued nor serviced

Plaintiff's automobile insurance policy.  Def. br. at 9; Def. Ex. 3, Greensfelder Decl. ¶ 5

(declaring that AIG is not licensed to sell or service insurance policies).  The Court notes that

Plaintiff fails to cite to any legal authority concerning the existence of a duty under these

circumstances.  Next, Plaintiff argues under a theory of apparent authority that AIG placed its

logo on a Telewire notice which was sent to Plaintiff.  Defendant has produced evidence that

Plaintiff was aware that he was dealing with a subsidiary of AIG, not AIG itself.  First, Plaintiff

testified during deposition that he had no memory of the Telewire notice that he alleges was sent

from AIG.  Boyko Dep. at 55-57.  Secondly, AIGM has already affirmatively stated that "AIGM

was solely responsible for marking, selling, premium billing and collection for the underwriting

companies."  AIG Ex. 4, Alexander Decl. ¶ 4.  Thirdly, Plaintiff is unable to demonstrate with

evidence in the record that AIG was responsible for sending any bill or for servicing Plaintiff's

insurance policy.

The Court further finds that Plaintiff is unable to prove secondary liability on the part of AIG.  The mere use of a trade name on a bill does not by itself establish apparent authority.  See N. Rothenberg & Son, Inc. v. Nako, 139 A.2d 783, 790 (N.J. Super. Ct. App. Div. 1958). Furthermore, New Jersey courts have found that a parent company's mere ownership of another company does not prevent the individual corporate identities from being respected.  Canter v. Lakewood of Voorhees, 420 N.J.Super. 508, 520 (2011).  A parent company will only be liable for the negligence of a subsidiary when the parent has "control, so that the subsidiary company may be used as a mere agency or instrumentality for the [holding] company.'"  Id. (citation omitted).  AIG has produced evidence demonstrating that AIG functions as a holding company, and that AIG does not exercise control over the day-to-day operations of AIGM or AIICNJ, both of which have their own corporate boards of directors.  Def. Ex. 3, Greensfelder Decl., ¶¶ 2, 4-5. Plaintiff has not produced evidence in the record to create a genuine dispute of material fact regarding these issues.  Therefore, summary judgment will be granted as to AIG on the negligence claim.[14]

### D.  Breach of Implied Covenant of Good Faith and Fair Dealing – AIGM & AIICNJ[15]

In New Jersey, all contracts contain an implied covenant of good faith and fair dealing. Wilson v. Amerada Hess Corp., 773 A.2d 1121, 1126 (N.J. 2001).  The implied duty of good faith and fair dealing requires the existence of a contractual relationship, but establishes liability for certain actions beyond the strictures of a precise contract.  See Noye v. Hoffman-La Roche,

---

[14] Because, as discussed below, the Court finds that Plaintiff's arguments regarding apparent authority and secondary liability as to AIG are unavailing, the Court further grants summary judgment as to AIG on the CFA and TCCWNA claims.  See discussion infra Part III.E and III.F.

[15] The Court notes that Plaintiff's claim for breach of the Duty of Good Faith and Fair Dealing against AIG was previously dismissed pursuant to this Court's December 23, 2009 Order.  Therefore, this Court no longer has jurisdiction over this claim with respect to AIG.

Inc., 570 A.2d 12, 14 (N.J. Super. Ct. App. Div. 1990).  To establish a breach of the implied

covenant of good faith and fair dealing, a plaintiff must demonstrate that a defendant 1) acted

with bad motives or intentions to 2) deny the benefit of the bargain initially intended by the

parties.  Brunswick Hills Racquet Club, Inc. v. Route 18 Shopping Ctr. Assoc., 864 A.2d 387,

396 (N.J. 2005).  Plaintiff moves for summary judgment on this claim with respect to AIGM and

AIICNJ.

 Having granted summary judgment in favor of Plaintiff on the breach of contract claim

against AIICNJ, this Court finds that Plaintiff's good faith and fair dealing claim against AIICNJ

is barred by the economic loss doctrine.  See discussion supra Part III.B.1.

 The Court denies summary judgment on the good faith and fair dealing claim against

AIGM.  Defendant argues that summary judgment cannot be entered in favor of Plaintiff because

there is a genuine dispute of material fact regarding whether Plaintiff received a benefit from the

bargain.  AIGM asserts that Plaintiff received coverage for the duration of his insurance policy,

and that the bills sent to Plaintiff after his policy term ended did not deny him this benefit of

insurance coverage.  Def. br. at 12.  Plaintiff counters that he never requested coverage, nor did

he receive coverage for a new policy term for which he was billed.  Plaintiff relies on the

testimony of his expert, Mr. Castellini, to demonstrate that AIGM was never at risk to pay out

any claims during the period after Plaintiff's original policy term should have terminated, since

Plaintiff had another source of primary insurance during this period.  Defendants dispute

Plaintiff's expert's analysis.  Def. br. at 59-68 (challenging the methodology and analyses

contained within Castellini's report).  The Court finds that there is a genuine dispute regarding

whether Defendants would have had to provide benefits for an insurance claim for the period

subsequent to the period covered by the original policy.  There is also a genuine dispute

32

regarding whether Defendants acted with "bad motives or intentions" in sending this extra bill. Defendants assert that the extra bill was generated without deceptive intent or wrongful motive, as it was the result of an error in AIG's computer billing system.  Plaintiff asks the Court to infer deceptive intent based on Defendants' communications to Plaintiff, both orally and in written bills, seeking payment on the wrongful billing.  However, the Court finds that Plaintiff, as the movant in this summary judgment motion, has failed to establish the absence of a genuine dispute on the issue of AIGM's intentions in sending the bill.  Therefore, the Court denies summary judgment to Plaintiff on the good faith and fair dealing claim with respect to AIGM.

### E.  Consumer Fraud Act – AIG, AIGM, AIICNJ, & CCS

The parties cross-move for summary judgment on Plaintiff's CFA claim.  The CFA was enacted to deter fraudulent practices by merchants in the marketplace.  See Solo v. Bed Bath & Beyond, Inc., 2007 WL 1237825, at *2 (D.N.J. April 26, 2007).  The CFA declares unlawful:

> The act, use or employment by any person of any unconscionable commercial practice, deception, fraud, false pretense, false promise, misrepresentation, or the knowing concealment, suppression, or omission of any material fact with intent that others rely upon such concealment, suppression or omission, in connection with the sale or advertisement of any merchandise or real estate, or with the subsequent performance of such person as aforesaid . . . .

N.J. Stat. Ann. § 56:8-2.  To state a CFA claim, a plaintiff must allege "(1) an unlawful practice by the defendants; (2) an ascertainable loss by plaintiff; and (3) a causal nexus between the first two elements."  Parker v. Howmedica Osteonics Corp., No. 07-2400, 2008 WL 141628, at *2 (D.N.J. Jan. 14, 2008) (citing New Jersey Citizen Action v. Schering-Plough Corp., 842 A.2d 174, 176 (N.J. Super. Ct. App. Div. 2003)).  It is immaterial to the CFA analysis "whether or not any person has in fact been misled, deceived or damaged."  N.J. Stat. Ann. § 56:8-2.

### 1. AIGM and AIICNJ

Plaintiff first argues that he is entitled to summary judgment in his favor on the CFA claim against AIGM and AIICNJ.  Defendants counter that Plaintiff is unable to establish the third element of causation.  Defendants explain that it is clear that Plaintiff was not induced by Defendants to pay the bill from Plaintiff's deposition, during which Plaintiff testified that 1) he knew he did not owe the money for which he had been billed, 2) Plaintiff's counsel advised Plaintiff to pay the bill, 3) Plaintiff had made a determination as of January 18, 2008, to file a class action lawsuit; and 4) Plaintiff paid the bill after January 18, 2008.  Def. br. at 15 (citing Boyko Dep. at 83-84).  Plaintiff again counters with the statement in his affidavit that Plaintiff paid the June 26, 2007 bill for $262.00 "in order to avoid some of the consequences of non-payment."  Pl. Ex. Q, Boyko Cert., ¶ 8.  Plaintiff further stated under oath that "CCS commenced and continued collection efforts against me even though I told them I didn't owe any money." Id. ¶ 9.  Based on these disparate factual contentions in the record, the Court finds that there is a genuine dispute of material fact regarding Plaintiff's state of mind and motivations for making the payment.  Accordingly, the Court denies Plaintiff's and AIGM and AIICNJ's cross-motions for summary judgment on the CFA claim.

### 2. AIG

AIG cross-moves for summary judgment on the CFA claim on the basis that AIG never sold anything to Plaintiff, and therefore cannot be liable under the CFA.  As noted above, the CFA creates liability for "the commission of a deception, fraud, misrepresentation, etc., 'in connection with' the sale of merchandise or services. To satisfy this requirement, '[t]he misrepresentation has to be one which is material to the transaction ... made to induce the buyer to make the purchase.'" Castro v. NYT Television, 851 A.2d 88, 95 (N.J. App. Div. 2004) (citing Gennari v. Weichert Co. Realtors, 691 A.2d 350, 366 (N.J. 1997)).  The Court finds that AIG

cannot be liable under the CFA because AIG is a holding company that does not sell or service insurance products.  Furthermore, as discussed above, see discussion supra Part III.C.2, the Court finds Plaintiff's arguments concerning apparent authority and secondary liability on the part of AIG unavailing.  Therefore, the Court grants AIG's motion for summary judgment as to the CFA claim.

### 3. CCS

CCS also cross-moves for summary judgment on the CFA claim.  This Court has previously found that "CCS did not sell any merchandise or real estate" to Plaintiff.  Mot. to Dismiss Opinion at 6.  Plaintiff's theory of liability for CCS is therefore necessarily based on a conspiracy claim.  CCS asserts that Plaintiff has failed to establish sufficient facts to create a plausible conspiracy theory between CCS and the other Defendants.

"A civil conspiracy is 'a combination of two or more persons acting in concert to commit an unlawful act, or to commit a lawful act by unlawful means, the principal element of which is an agreement between the parties 'to inflict a wrong against or injury upon another,' and 'an overt act that results in damage.'"  Morgan v. Union County Bd. of Chosen Freeholders, 633 A.2d 985, 998 (N.J. App. Div. 1993).  Furthermore, "the question whether an agreement exists should not be taken from the jury in a civil conspiracy case so long as there is a possibility that the jury can 'infer from the circumstances [that the alleged conspirators] had a meeting of the minds and thus reached an understanding' to achieve the conspiracy's objectives."  Id. at 999.

Here, Plaintiff argues that CCS, AIGM, and AIICNJ conspired to commit an unlawful act, namely the overcharging of Plaintiff and other similarly situated individuals.  Plaintiff further argues that CCS committed an overt act in furtherance of this conspiracy by issuing bills

and/or the Telewire to Plaintiff and others, for the purpose of collecting unlawful charges.  Pl. Opp. br. at 14.

The evidence establishes that AIGM sent billing account records to CCS, and that CCS used these records for information prior to contacting consumers for collections purposes. Plaintiff has also established that Plaintiff's data, as well as certain other consumers' data, should not have been included in the information transferred from AIGM to CCS.

Plaintiff and CCS disagree about whether CCS employed sufficiently reasonable procedures to safeguard against collecting invalid debts.  CCS Mot. for Summary Judgment, Ex. G, Shapiro Dep. at 36-43.  The evidence demonstrates that CCS teaches its customer service representatives to assist customers, such as Plaintiff, in understanding whether their debt is valid and how the customer can challenge the validity of their debt.  Id.  The evidence further demonstrates that CCS does not adjust debts on its own, but that CCS seeks to collect information from customers relevant to the validity of the customers' debts.  Id.  For example, a standard initial question that would be asked by a customer service representative is whether a customer had another form of insurance during the period of coverage for which the billing insurer seeks reimbursement.  Id.  If the customer answers in the affirmative, CCS then seeks to have the customer provide documentation of overlapping insurance during the relevant coverage period.  Id.

Plaintiff disputes the adequacy of CCS's safeguards, arguing that they are insufficient to prevent the collection of invalid debts, as in Plaintiff's case.  Pl. Opp. br. at 14.  Plaintiff further cites to the testimony of his expert witness, Mr. Castellini, who opined that CCS acted with deliberate disregard as to the validity of the debts sought to be collected.  Pl. Ex. B, at 15.  Mr. Castellini notes, for example, that CCS's collection procedures "impose[] a requirement on the

insured, not contained in the policy and not referred to in the billing notice, to telephone the company and state that a policy is not being renewed." Id.

The Court finds that this evidence, viewed in the light most favorable to Plaintiff, could potentially allow a jury to "infer from the circumstances" the existence of a conspiracy between CCS and the other Defendants under the CFA.  The Court finds that the existence of a genuine dispute of material fact on the issues of 1) CCS's intentions in trying to collect on the invalid debt, and 2) the adequacy of CCS's safeguarding procedures, precludes the grant of summary judgment on Plaintiff's CFA conspiracy claim.  Summary judgment on this claim is further inappropriate since, as discussed above, the Court declines to find the absence of a violation of the CFA by either AIGM or AIICNJ at this stage.  See discussion supra Part III.E.1.

### F.   Truth-In-Consumer Contract, Warranty and Notice Act – AIG, AIGM, & AIICNJ

The TCCWNA requires that consumer contracts be written in a clear and understandable manner.  See Alloway v. Gen. Marine Indus., L.P., 695 A.2d 264, 274 (N.J. 1997).  The TCCWNA provides, in pertinent part, that:

> No seller, lessor, creditor, lender or bailee shall in the course of his business offer to any consumer or prospective consumer or enter into any written consumer contract or give or display any written consumer warranty, notice or sign . . .  which includes any provision that violates any clearly established legal right of a consumer or responsibility of a seller, lessor, creditor, lender or bailee as established by the State or Federal law at the time the offer is made or the consumer contract is signed or the warranty, notice or sign is given or displayed.

N.J. Stat. Ann. § 56:12-15.  Consumer is defined as "any individual who buys, leases, borrows, or bails any money, property or service which is primarily for personal, family or household purposes."  Id.

**1. AIG**

AIG moves for summary judgment on the TCCWNA claim because AIG is not a creditor of Plaintiff.  Plaintiff argues that AIG is a creditor because the bill Plaintiff received said to make the check payable to "AIG."  Pl. Ex. A.  Although the TCCWNA does not define the term creditor, see N.J. Stat. Ann. § 56:12-30; Barrows v. Chase Manhattan Mortg. Corp., 465 F. Supp. 2d 347, 362 (D.N.J. 2006), undefined words in a statute should be given their plain meaning, Barrows, 465 F. Supp. 2d at 362. Generally speaking, the term "creditor" has been defined as "one to whom a debt is owed; one who gives credit for money or goods." Id.  Based on this definition of "creditor," the Court finds that AIG could not be a creditor of Plaintiff, because Plaintiff's insurance contract was serviced by AIGM, and Plaintiff's premium payments were owed to AIGM.  Def. Ex. 3, Alexander Decl. ¶ 8; Def. Ex. 5, McCulloch Dep. at 29-32.

As discussed above, the Court has found that the use of the AIG logo on materials mailed by AIGM does not alone create liability for AIG under the apparent authority doctrine.  The Court has further found that AIG is not secondarily liable.  See discussion supra Part III.C.3. Therefore, the Court grants summary judgment to AIG on the TCCWNA claim.

**2. AIGM and AIICNJ**

Plaintiff next moves for summary judgment on the TCCWNA claim as to AIGM and AIICNJ.  Defendants oppose this motion on the basis that Plaintiff has not demonstrated the violation of a "clearly established legal right of a consumer" or a responsibility of AIGM and AIICNJ.  N.J. Stat Ann. § 56:12-15.

The New Jersey Supreme Court has found that an overcharge in an automobile dealer contract constituted a violation of the TCCWNA.  Bosland v. Warnock Dodge, Inc., 964 A.2d 741, 750 (N.J. 2009).  In Bosland, the plaintiff purchased a new automobile from an automobile

dealer.  Id. at 744.  She paid the full purchase price of the vehicle, but subsequently overcharged

the plaintiff, without prior disclosure, a $20 or $40 documentary service fee.  Id. at 745.  The

New Jersey Supreme Court found that there was a clearly established right of a consumer to

receive accurate bills and full disclosure of all charges pursuant to the plaintiff's contract.  Id.

The Bosland Court further found that given the attendant risks of further overcharges to

consumers, it was appropriate that the plaintiff be able to bring a class action suit.  Id. at 746.

Plaintiff cites to a New Jersey Department of Banking & Insurance ("DOBI") regulation

regarding the procedures for conveying and accepting renewal offers for automobile coverage.

Pl. br. at 12 (citing N.J.A.C. § 11:3-8.3(b)).  The DOBI regulations state in relevant part:

> (b) Each renewal offer [by an agency or corporation regulated by the DOBI] shall
> be in the usual form of either a renewal policy, a certificate, or a renewal offer or
> bill.  A renewal offer or bill shall indicate the date by which the renewal premium
> is due.
>
> . . .
>
> 2. Where acceptance of the renewal is made by mailing payment of renewal bill,
> the renewal notice shall state the following in a clear and conspicuous manner:
>
> . . .
>
> ii. The consequences to the insured if the insurer does not receive the renewal
> premium by the due date . . . , and
>
> iii. A statement advising whether the insured has the option to make payment to
> the insurance producer.

N.J.A.C. § 11:3-8.3.  Based on the language of the DOBI regulations, and guided by the

Supreme Court's decision in Bosland, this Court finds that Defendants were placed on notice as

to Plaintiff's clearly established right to receive an accurate bill that fully disclosed the amount

due, the consequences of nonpayment, and the option of nonpayment of the renewal bill.

Instead, the bill Plaintiff received falsely characterized Plaintiff's bill as being for "a balance

due" for "coverage that was provided prior to your cancellation date." Pl. Ex. A. The bill further

failed to advise Plaintiff that he did not owe the money requested by the bill, and that Plaintiff

had the option of not paying the bill to the insurance producer. As there is no genuine dispute of

material fact as to the contents of the bill that Plaintiff received, the Court grants summary

judgment to Plaintiff on the TCCWNA claim as to AIGM and AIICNJ.

### G. Fair Debt Collection Practices Act - CCS

The Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692 et seq., provides a

cause of action to consumers who have been subjected to "the use of abusive, deceptive, and

unfair debt collection practices . . . ." 15 U.S.C. § 1692(a). The FDCPA was enacted to

eliminate abusive debt collection practices, and the fee shifting provision included in the FDCPA

enables consumers to vindicate their personal rights while benefiting society in general.

Plaintiff and CCS cross-move for summary judgment on the FDCPA claim. CCS cross-

moves for summary judgment, asserting the bona fide error defense.

### 1. CCS's "True Name"

Plaintiff asserts that CCS is strictly liable for failing to use its true legal name while

performing debt collections. Under the FDCPA, a debt collector engages in false, deceptive, or

misleading representations when collecting a debt if it uses "any business, company, or

organization name other than the true name of the debt collector's business, company, or

organization." 15 U.S.C.  § 1692e(14).

The Court finds that CCS is strictly liable for a violation of § 1692e(14). As stated in the

December 23, 2009 Opinion, "the Court is convinced that § 1692e(14) requires debt collectors to

use a precise, official name when conducting debt collection activities." Plaintiff argues, and

CCS does not dispute, that CCS's "true name" is "Credit Control Services, Inc." Def. Opp. br. at

17.  Furthermore, CCS sent three billing notices to Plaintiff under the false name "Credit Collection Services."  Pl. br. at 24 (citing Pl. Ex. R).

CCS argues that notwithstanding the fact that it failed to use its true name on its billing collections notices, it should not be strictly liable because CCS's error did not result in actual damages.  CCS notes that Plaintiff stated in deposition that Plaintiff understood that the three bills from "Credit Collection Services" were sent in an effort to collect a debt.  Def. br. at 18 (citing Boyko Dep. at 60).  Defendant further argues that other consumers, even the "least sophisticated debtor," who received bills from CCS, would not be deceived because the name "Credit Collection Services" is inherently more descriptive than "Credit Control Services." Therefore, CCS argues, CCS cannot be liable based on its failure to use its true name, since such a failure constitutes "harmless error."  The Court finds that to the contrary, the "least sophisticated debtor" would have significant difficulty determining the true identity of the debt collection company, since CCS is not registered or licensed under the name "Credit Collection Services."  This inability to determine the true identity could indeed have harmful effects on a debtor, especially a less sophisticated debtor.

Furthermore, even if CCS's error was in fact harmless, the Court already considered and rejected Defendant's "harmless error" argument in the Court's December 23, 2009 Opinion.  As discussed therein,

> Subsection 14 does not include any language to the effect of "that deceives the party."  Thus, subsection 14 must be read to be a per se deceptive act. In other words, if a party can prove, for example, that he received a letter using a name other than the debt collector's true name, he has proven a deceptive practice.

Opinion at 12-15; see Mahan v. Retrieval-Masters Credit Bureau, Inc., 777 F. Supp. 2d 1293, 1299 n.7, 1300 n.8 (S.D. Ala. 2011) (citing numerous cases holding that the true name of a debt collector is limited to its registered or licensed name).  Accordingly, the Court rejects CCS's

argument and finds as a matter of law that actual harm is not an element of a violation of §
1692e.

The Court further finds that CCS has produced no evidence, let alone a preponderance of
the evidence, that CCS's use of the false name "Credit Collection Services" was unintentional.
The Court therefore finds that summary judgment in favor of Plaintiff as to CCS's liability[16]
under § 1692e is appropriate, because there is no genuine dispute of material fact concerning the
bona fide error defense as to CCS's liability under § 1692e.

### 2. Bona Fide Error Defense

CCS cross-moves for summary judgment, asserting the bona fide error defense.  The
FDCPA provides an absolute defense for a debt collector engaging in conduct that otherwise
violates the FDCPA "if the debt collector shows by a preponderance of evidence that the
violation was not intentional and resulted from a bona fide error notwithstanding the
maintenance of procedures reasonably adapted to avoid any such error."  15 U.S.C. § 1692k(c).
As discussed below, the Court denies Plaintiff's and CCS's cross-motions for summary
judgment.

Plaintiff asserts that CCS is liable under § 1692k(c) because the amount that FDCPA
sought to collect is not "expressly authorized by the agreement creating the debt or permitted by
law."  Pl. br. at 25 (quoting 15 U.S.C. § 1692f(1)).

Defendant counters that the violation was not intentional, as evidenced by the numerous
safeguards that CCS put in place to prevent collections of invalid debts.  Plaintiff argues that he
stated on several occasions to CCS that the claimed debt of $262 was not valid.  CCS notes that
there is no evidence that any other policyholders referred to CCS by AIGM disputed their debts,

---

[16] The Court notes that under 15 USC § 1692K(a)(1), a plaintiff can collect damages for "any actual damage
sustained by such person as a result of such failure."  The Court grants summary judgment to Plaintiff only as to
CCS's liability, and not damages, under the FDCPA.

no evidence that CCS knew of the computerized billing error that caused AIGM to bill Plaintiff

incorrectly, and no evidence that AIGM ever told CCS that the data used to generate the bills

may not be reliable.  CCS br. at 13-14.  CCS further notes that it publishes and regularly updates

in-house compliance manuals, which set out procedures designed to prevent the collection of

invalid debts by customer service representatives.  CCS Ex. G, Shapiro Dep., at 20.

 "[A] showing of 'procedures reasonably adapted to avoid any such error' must require

more than a mere assertion to that effect.  The procedures themselves must be explained, along

with the manner in which they were adapted to avoid the error."  Reichert v. Nat'l Credit Sys.,

Inc., 531 F.3d 1002, 1007 (9th Cir. 2008).  Plaintiff argues that CCS has merely demonstrated

that CCS will only question the validity of a debt if a customer objects, at which point CCS will

send a query back to AIG.  Plaintiff further notes that despite the existence of some allegedly

safeguarding procedures on the part of CCS, the critical issue is whether CCS has addressed the

issue of falsely-billed post-automatic termination premiums.  Plaintiff points out that there are no

procedural safeguards in place to protect individuals, such as Plaintiff, from being billed for

periods occurring after the policy should have been automatically terminated.

The Court finds that there is a genuine dispute of material fact regarding CCS's intentions

in trying to collect Plaintiff's debt.  CCS has failed to demonstrate by a preponderance of the

evidence that the bill to Plaintiff, which attempted to collect an invalid debt, was unintentional or

that it resulted from a bona fide error.  Therefore, the Court denies summary judgment to both

Plaintiff and CCS on the issue of whether CCS is liable for a violation of § 1692f(1).

**IV.    CONCLUSION**

For the foregoing reasons, Plaintiff's motion for class certification is granted in part and

denied in part.  Accordingly, the Court certifies the two above-described classes with respect to

AIICNJ, AIGM, and CCS, respectively.  See discussion supra Part II.  Furthermore, the Court resolves Plaintiff's and Defendants' cross-motions for summary judgment as described above. Cf. discussion supra Part III.  An appropriate order shall issue today.


Date: 4/26/12                                   /s/ Robert B. Kugler
                                                ROBERT B. KUGLER
                                                United States District Judge